**WINDSOR ASSOCIATES, INC. and Lakeview Associates, Inc.**

v.

**Alvin E. GREENFELD; Joel Y. Zenitz; Frank F. Favazza, Jr.; Frank F. Favazza & Son, Inc.; Housing Consultants, Incorporated.**

Civ. A. No. M–82–3737.

United States District Court, D. Maryland.

May 18, 1983.

Paul Walter, Barbara S. Brewer, Tydings & Rosenberg, Baltimore, Md., for plaintiffs.

James M. Kramon, Paul W. Nolan, Kramon & Graham, P.A., Baltimore, Md., for defendants Alvin E. Greenfeld, Joel Y. Zenitz and Housing Consultants, Inc.

Arnold M. Weiner, D. Christopher Ohly, M. Melinda Thompson, Melnicove, Kaufman, Weiner & Smouse, P.A., Baltimore, Md., for defendants Frank F. Favazza, Jr. and Frank F. Favazza & Son, Inc.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

This is a civil action for damages, injunctive and declaratory relief brought by Windsor Associates, Inc. (Windsor) and Lakeview Associates, Inc. (Lakeview) under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* (RICO) and the common law of fraud, fraudulent concealment, negligent misrepresentation, breach of contract, and conversion. Currently pending before the court in the instant case is the joint motion of Alvin E. Greenfeld, Joel Y. Zenitz, Housing Consultants, Inc., Frank F. Favazza, and Frank F. Favazza & Son, Inc., defendants, to dismiss plaintiffs' complaint pursuant to Rules 9(b), 12(b), and 12(h), of the Federal Rules of Civil Procedure.

## I

Windsor and Lakeview are Maryland corporations, each having its principal place of business in Maryland. Both firms are engaged in the business of real estate development. Windsor possesses contractual rights to develop a housing project for the Housing Authority of Baltimore City known as Windsor Gardens Turnkey Housing for the Elderly (Windsor Gardens). Lakeview possesses similar rights with respect to Lakeview Towers Extension Turnkey Housing for the Elderly (Lakeview Towers). Both firms obtained their respective development rights from defendants Zenitz and Greenfeld by agreements executed on November 19, 1976.

Defendants Zenitz and Greenfeld are Maryland residents who are officers and stockholders of defendant Housing Consultants, Inc., a Virginia corporation with its principal place of business in Virginia. Defendant Frank F. Favazza is also a Maryland resident who is president, principal stockholder, and director of defendant Frank F. Favazza & Son, Inc., a Maryland corporation with its principal place of business in Maryland.

The allegations contained in plaintiffs' complaint may be simply stated. Plaintiffs allege that on December 3, 1976, they entered into agreements with Zenitz and Greenfeld wherein those defendants agreed to act as consultants with respect to the two housing projects. Specifically, plaintiffs claim that Zenitz and Greenfeld agreed "to aid and assist Windsor Associates and Lakeview Associates in the management, development, construction and completion of Windsor Gardens and Lakeview Towers, including the negotiation of contracts with all contractors, architects, engineers, and others." Complaint at 6.

Plaintiffs further allege that defendants, acting together, devised a scheme to defraud plaintiffs in which Zenitz and Greenfeld would recommend Frank F. Favazza & Son, Inc. as the general contractor for the two housing projects in return for substantial kickbacks. Pursuant to this scheme, Favazza allegedly submitted inflated contract prices for the construction of the projects to plaintiffs which they accepted in reliance upon Zenitz and Greenfeld's "false representations regarding the reasonableness and legitimacy" of those prices. Complaint at 8. Once construction began, Favazza is alleged to have submitted "padded" requisitions for progress payments from which the kickbacks were paid to Zenitz and Greenfeld.

On this basis plaintiffs make two RICO Act and numerous state law claims. With regard to RICO, plaintiffs assert that in effecting their fraudulent scheme, defendants committed acts indictable under both the federal mail fraud statute, 18 U.S.C. § 1341, and the Travel Act, 18 U.S.C. § 1952, which proscribes interstate and foreign travel or transportation in aid of racketeering enterprises; that such acts constitute "racketeering activity" within the meaning of 18 U.S.C. § 1961(1)(B); that defendants acted as an "enterprise" within the meaning of 18 U.S.C. § 1961(4) and engaged in a "pattern of racketeering activity" pursuant to 18 U.S.C. § 1961(5); that consequently defendant violated 18 U.S.C. §§ 1962(c) and 1962(d) which prohibit such activity; and that plaintiffs are therefore entitled to obtain declaratory and injunctive relief and to recover treble damages, court costs, and attorney's fees under 18 U.S.C. §§ 1964(a) and 1964(c) which provide civil remedies for any person injured in his business or property by reason of a violation of § 1962. Additionally, plaintiffs seek to invoke the court's pendent jurisdiction to assert state claims.

Defendants primarily assert that plaintiffs have failed to state a federal claim upon which relief may be granted, and that as a result, the court lacks proper subject matter jurisdiction to hear plaintiffs' state common law claims. In addition, defendants contend that plaintiffs have pleaded their fraud claims with insufficient particularity, thereby justifying dismissal under F.R.Civ.P. 9(b). Finally, defendants argue that dismissal is warranted because 18 U.S.C. § 1964(c) is unconstitutional on its face and as applied to this case.

## II

The relevant RICO provisions are as follows. Sections 1964(a) and 1964(c) provide:

(a) The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

. . . . .

(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. §§ 1964(a), 1964(c).

Sections 1962(c) and 1962(d) provides:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

18 U.S.C. §§ 1962(c), 1962(d).

RICO also provides definitions for the material terms contained in section 1962 as they relate to the interest dispute.

§ 1961. Definitions

As used in this chapter . . . —

(1) "racketeering activity" means . . . (B) any act which is indictable under any of the following provisions of Title 18, United States Code: . . . section 1341 (relating to mail fraud) . . . [and] section 1952 (relating to racketeering) . . . ;

. . . . . .

(3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property;

(4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter [enacted Oct. 15, 1970] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity . . . .

18 U.S.C. §§ 1961(1)(B), 1961(3), 1961(4), 1961(5).

■ Applying these statutory provisions to the facts alleged in plaintiffs' complaint, the court concludes that plaintiffs have stated a claim under RICO. Windsor and Lakeview allege that they have been defrauded out of substantial sums of money, thereby suffering injury in "their business or property" within the meaning of section 1964(c). Plaintiffs further contend that they were defrauded by the defendants acting jointly as an "enterprise," and that defendants conducted the affairs of that enterprise "through a pattern of racketeering activity." 18 U.S.C. § 1961(5). There also appear to be sufficient allegations of fact contained in the complaint to defeat defendants' motion insofar as it is based on F.R.Civ.P. 12(b)(6).

■ Defendants nevertheless assert that plaintiffs have failed to state a federal claim with respect to the statutory scheme outlined above, and in support of that assertion, they argue (1) that the complaint fails to allege that defendants are associated

with organized crime; and (2) that the complaint does not set forth a "racketeering enterprise injury." With regard to the first of these arguments, defendants contend that the proscriptions of RICO are aimed directly at organized criminals, and that in promulgating the statute, Congress intended solely to root out organized crime in the United States. Defendants therefore urge that unless they are charged with being somehow affiliated with organized crime, no action may be brought against them on the basis of RICO.

There is no doubt that RICO represents, in large measure, a Congressional attempt to combat the forces of organized crime in this country. In examining the legislative history behind the Organized Crime Control Act of 1970 of which RICO is a part, the Supreme Court recently has observed:

> [I]t was the declared purpose of Congress "to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime."

*United States v. Turkette,* 452 U.S. 576, 589, 101 S.Ct. 2524, 2531, 69 L.Ed.2d 246 (1981) (*quoting* Congressional Statement of Findings and Purpose, § 1 of Act Oct. 15, 1970, P.L. 91–452, Title IX, § 901, 84 Stat. 923). This observation is buttressed by a plethora of remarks by members of both Houses of Congress, as well as numerous statements contained in the congressional reports accompanying the draft legislation. *See id.* at 588–93, 101 S.Ct. at 2531–2533.

In drafting RICO, however, Congress was confronted with numerous concerns as to the viability of a statute that would be restricted in its application solely to organized criminals. From a constitutional perspective, such a restriction might have been vulnerable to due process attack on vagueness grounds. Additionally, the limitation might have been construed as placing impermissible restraints on the First Amendment right of freedom of association. *See*

*Civil RICO: The Temptation and Impropriety of Judicial Restriction,* 95 Harv.L. Rev. 1107–08 (1982).

Furthermore, given the inherent difficulties in defining "organized crime," several congressmen voiced the concern that, if RICO were restricted to "organized crime" members, proving a case under the statute would constitute quite a difficult endeavor. *Id.* at 1108–09. Not only would it have to be proven that the defendant being sued was affiliated with organized crime, but also the existence of *the organized crime,* whatever that might mean. *See United States v. Mandel,* 415 F.Supp. 997, 1018 (D.Md.1979), *aff'd in part and vacated and remanded in part,* 591 F.2d 1347 (4th Cir.), *aff'd on reh'g en banc,* 602 F.2d 653 (4th Cir.1979), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980).

Congress apparently heeded these concerns, for there is nothing in the letter of RICO to suggest that the statute applies only to organized criminals. Indeed, a review of RICO's statutory language indicates that "Congress sought to reach organized criminals by imposing sanctions for the types of activities in which they engage, rather than by directly proscribing criminal association." 95 Harv.L.Rev., *supra* at 1109.

The courts that have been called upon to resolve this issue have reached conflicting results. The weight of authority supports the proposition that association with organized crime is *not* a prerequisite for liability under RICO. *See, e.g., Bennett v. Berg,* 685 F.2d 1053, 1063–64 (8th Cir.1982); *United States v. Martino,* 648 F.2d 367, 380 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2020, 72 L.Ed.2d 474 (1982), *aff'd in reh'g en banc,* 681 F.2d 952 (5th Cir.1982); *United States v. Uni Oil, Inc.,* 646 F.2d 946, 953 (5th Cir.1981); *United States v. Aleman,* 609 F.2d 298, 303–04 (7th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); *United States v. Forsythe,* 560 F.2d 1127, 1136 (3d Cir.1977); *United States v. Campanale,* 518 F.2d 352, 363–64 (9th Cir.1975), *cert. denied, sub nom. Matthews v. United States,* 423 U.S. 1050,

96 S.Ct. 777, 46 L.Ed.2d 638 (1976); *United States v. Mandel, supra* 415 F.Supp. at 1018–19. A common thread running through these cases is the recognition that although the primary purpose of RICO is the elimination of organized crime, "its proscriptions are aimed at conduct, not status." *United States v. Martino, supra,* 648 F.2d at 380 (*quoting United States v. Elliott,* 571 F.2d 880, 903 (5th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978)). Moreover, it has been observed that Congress carefully considered limiting the application of RICO to organized criminals, and consciously chose not to do so. *United States v. Mandel, supra,* 415 F.Supp. at 1019.

Some courts have, however, construed RICO as being limited to persons associated with organized crime. *See Minpeco, S.A. v. Conticommodity Services, Inc.,* 558 F.Supp. 1348 (S.D.N.Y.1983); *Waterman S.S. Corp. v. Avondale Shipyards, Inc.,* 527 F.Supp. 256 (E.D.La.1981); *Adair v. Hunt International Resources Corp.,* 526 F.Supp. 736 (N.D.Ill. 1981); *Kleiner v. First National Bank of Atlanta,* 526 F.Supp. 1019 (N.D.Ga.1981); *Barr v. WUI/TAS, Inc.,* 66 F.R.D. 109 (S.D. N.Y.1975). In all of these cases, the courts found determinative legislative history demonstrating that the purpose of RICO was to eradicate organized crime.

This court is persuaded by the reasoning relied upon by the weight of authority in finding that RICO is not restricted to those associated with organized crime. Although it is quite clear that the *existence* of organized crime was the motivating force behind the statute's enactment, it is just as clear that Congress recognized that so limiting RICO would rob it of the force necessary for it to be an effective, and perhaps even constitutionally acceptable, means of thwarting criminal activity. Accordingly, the court holds that affiliation with organized crime need not be alleged in bringing an action under 18 U.S.C. § 1961 *et seq.*

■ Defendants also claim that plaintiffs lack standing to bring an action under RICO. In this regard, defendants draw a distinction between a "racketeering enterprise injury" and an injury arising solely from alleged "predicate acts." Defendants argue that inasmuch as only the former are cognizable under the statute, and as plaintiffs' asserted injuries are of the latter type, dismissal for failure to state a claim is warranted.

The court agrees that injuries arising solely from "predicate acts," *i.e.,* violations of the laws enumerated in section 1961(1), provide no basis for recovery under RICO. *See United States v. Mandel, supra,* 591 F.2d at 1375. The statutory scheme outlined above provides that a RICO violation occurs when the alleged "predicate acts" are committed by or through an "enterprise" as defined in section 1961(4) and that "enterprise" has engaged in a "pattern of racketeering activity" within the meaning of section 1961(5). According to defendants, however, a "racketeering enterprise injury" entails something more. To be held liable under RICO, defendants assert that they must be charged with inflicting harm by virtue of a continuous pattern of behavior. Defendants insist that the alleged injuries must result from "insidious infiltration or operation by criminals of legitimate enterprises," and that the common understanding of the term "racket" "does not embrace occasional and transient acts of wrongdoing." Defendants' Joint Reply at 20. In support of this claim, defendants rely on a number of cases in which district courts have found that, although the remedial provisions of RICO are broadly worded, RICO should be restricted in its application because the purpose of the statute is limited. *See Johnson v. Rogers,* 551 F.Supp. 281 (C.D.Cal.1982); *Harper v. New Japan Securities International, Inc.,* 545 F.Supp. 1002 (C.D.Cal.1982); *Von Schaick v. Church of Scientology of Cal., Inc.,* 535 F.Supp. 1125 (D.Mass.1982); *Landmark Savings & Loan v. Rhoades,* 527 F.Supp. 206 (E.D.Mich. 1981); *North Barrington Development, Inc. v. Fanslow,* 547 F.Supp. 207 (N.D.Ill.1980). For example, in *Landmark,* the United States District Court for the Eastern District of Michigan observed:

What is required for standing to bring a civil RICO damage action is an allegation that the plaintiff has suffered a "racketeering enterprise injury."

Competitive injuries and racketeering enterprise injuries would frequently overlap, but they are not necessarily the same. A "racketeering enterprise injury" might occur, for example, if a civil RICO defendant's ability to harm the plaintiff is enhanced by the infusion of money from a pattern of racketeering activity into the enterprise. No such thing is alleged or even suggested here. At the most, the plaintiff's fraud claims are simply that the plaintiff suffered an injury by reason of fraud in which the mails happened to be used.

527 F.Supp. at 208–09.

The court need not dwell on defendants' standing claim at length for it is apparent that it is analytically indistinguishable from the argument which preceded it.[1] Indeed, the Seventh Circuit has quite recently repudiated the notion that a racketeering enterprise injury constitutes something more than the commission of two or more predicate offenses by or through an enterprise as defined in section 1961(4). In *Schacht v. Brown*, 711 F.2d 1343 (7th Cir.1983), the circuit court found that as it had already rejected the organized crime limitation, it would not revive that limitation under the guise of determining what kinds of activity are covered by RICO. *See also Prudential Lines, Inc. v. McKeon*, No. 80 Civ. 5853 (S.D.N.Y. April 21, 1982); *Meineke Discount Muffler Shops, Inc. v. Noto*,

548 F.Supp. 352 (E.D.N.Y.1982); *Hellenic Lines v. O'Hearn*, 523 F.Supp. 244 (S.D.N.Y. 1981).

This court agrees that the theory defendants rely upon represents a veiled attempt to restrict RICO in a manner that is inconsistent with both a literal reading of the statute and the way in which Congress intended RICO to operate. As stated previously, plaintiffs accuse defendants of committing two or more predicate offenses by or through a racketeering enterprise within a ten-year period. Plaintiffs also assert that they have been injured in their business or property as a result of these acts.[2] The court therefore concludes that defendants' contention that plaintiffs lack standing to sue under RICO is without merit.

### III

Another theory proposed by defendants as grounds for dismissal is that plaintiffs' complaint lacks the specificity required by F.R.Civ.P. 9(b) with respect to allegations of fraud. Specifically, defendants contend that the complaint fails to allege with sufficient particularity (1) the time, place, and content of the asserted misrepresentations constituting the fraud; (2) in what respects and to what degree the stipulated sum contract prices and interim requisitions were inflated or distorted; (3) the source of the legal duty to disclose that part of Favazza's contract price included a fee to Zenitz and Greenfeld; and (4) the circumstances constituting Mail Fraud and Travel Act viola-

---

1. Some of the cases upon which the defendants rely have suggested that a racketeering enterprise injury is equivalent to a competitive injury analogous to injury for which relief is available under civil antitrust laws. *E.g., North Barrington Development, Inc. v. Fanslow, supra. See generally Reading the "Enterprise" Element Back into RICO: Sections 1962 and 1964(c)*, 76 Nw.U.L.Rev. 100 (1981). Defendants do not argue that a competitive injury is necessary to have standing, nor do they assert that plaintiffs have failed to suffer a competitive injury by virtue of defendants' alleged acts. As such, the court need not address the issue, but pauses to note that it is unpersuaded by the authority on point that RICO may be so narrowly construed. *See Bennett v. Berg, supra,*

685 F.2d at 1058–59; 95 Harv.L.Rev., *supra* at 1109–14.

2. Defendants challenge this assertion, arguing that because plaintiffs agreed to stipulated contract prices for the housing projects, and as they have been charged no more for the construction thereof, plaintiffs have not suffered any pecuniary loss. Plaintiffs correctly respond that if, as alleged, they have been duped into financing defendants' kickback scheme, they have suffered an injury for which relief is available under RICO. *See Prudential Lines v. McKeon, supra.* The court therefore rejects defendants' challenge on this ground.

tions. Plaintiffs, in response, assert that they have been as specific in framing their complaint as possible at this stage of proceedings, and that supplementary factual allegations will be made as the information is obtained through discovery.

On its face, the complaint sets forth in general terms a scheme allegedly devised and implemented by defendants to defraud plaintiffs. Windsor and Lakeview claim that they employed Zenitz and Greenfeld to locate and thereafter negotiate a contract with a general contractor for the construction of two housing projects; that instead of faithfully discharging that duty, Zenitz and Greenfeld agreed to recommend Favazza in return for substantial kickbacks; that upon receiving Zenitz and Greenfeld's recommendation, plaintiffs hired Favazza as the general contractor for the housing projects; that the negotiated contract prices were artificially high to reflect the cost of the kickbacks; and that Favazza submitted false requisition forms as the mechanism utilized to obtain the monies necessary to fund the kickback scheme. More particularly, plaintiffs allege that they contracted for Zenitz and Greenfeld's services on or about December 3, 1976; that the contract between Windsor and Favazza was executed on or about May 19, 1977, and the contract between Lakeview and Favazza was executed on or about September 22, 1977; that plaintiffs agreed to Favazza's proposed contract prices in reliance on Zenitz and Greenfeld's representations that Favazza's proposals were fair even though defendants knew the same were distorted; that during the period extending from July 1977 through August 1979, Favazza knowingly submitted fake requisition forms pursuant to defendants' kickback scheme despite the general contractor's written certification that the charges contained in the requisition were proper; that defendants utilized the mail in furtherance of their fraudulent scheme in violation of 18 U.S.C. § 1341, and that Zenitz, Greenfeld, and Housing Consultants wrongfully threatened Favazza in violation of 18 U.S.C. § 1952. Moreover, plaintiffs claim that through discovery they will learn the exact amounts by which the construction projects for Windsor Gardens and Lakeview Towers were distorted, and the particular circumstances regarding the alleged mail fraud such as the relevant dates the mails were used to perpetrate defendants' kickback scheme.

■ Rule 9(b) of the Federal Rules of Civil Procedure provides, with regard to averments of fraud, that "the circumstances constituting fraud ... be stated with particularity." "Circumstances" refers to such matters as "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [was] obtained thereby." C. Wright and A. Miller, *Federal Practice and Procedure,* § 1297, pp. 400, 403 (1969) (and cases cited therein). Rule 9(b) must, however, be read in conjunction with the requirement of F.R.Civ.P. 8(a) that a complaint should consist of "a short and plain statement of the claim" for relief as well as the general policy embodied in the Federal Rules favoring simplicity and flexibility in pleading. *Id.,* § 1298 at 406–07. In balancing these two policies, "the most basic consideration in making a judgment as to the sufficiency of a pleading is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare an adverse pleading." *Id.* at 415.

■ The court finds plaintiffs' complaint sufficiently laden with particulars to apprise defendants of the scheme they allegedly devised to defraud plaintiffs, the acts allegedly undertaken pursuant to that scheme, and what was obtained thereby. The claims are neither vague nor conclusory. Rather, they clearly depict a scheme to defraud plaintiffs in violation of civil RICO as well as state common law. Accordingly, defendants' motion to dismiss the complaint for lack of specificity shall be denied.

IV

■ The plaintiffs having stated a claim under civil RICO, it is clear that defendants' contention that the court lacks proper subject matter jurisdiction to entertain this

dispute also lacks merit. With respect to the RICO claims, plaintiffs have properly invoked the court's federal question jurisdiction. Additionally, the state common law claims are properly before the court in light of the doctrine of pendent jurisdiction.

V

 Defendants' final thrust, that 18 U.S.C. § 1964(c) is both unconstitutional on its face and as applied to this case, merits only brief discussion. Defendants assert (1) that RICO is a criminal statute which does not afford the constitutional protections required in every other criminal action; (2) that the Act forces RICO defendants to choose between defending themselves and incriminating themselves thereby impairing their privilege of self-incrimination under the Fifth Amendment; and (3) that a judicial determination prior to a return of an indictment against defendants in this case, that conduct which is the subject of the complaint is "indictable" under the Mail Fraud and/or Travel Act, would unconstitutionally impair defendants' right to be charged, if at all, by an unbiased and independent grand jury.

What all three of these arguments have in common is that they all can be asserted against any act of Congress that provides for both civil and criminal enforcement of a statute. It is, however, settled law

> that acts which may be prohibited by Congress may be made the subject of both criminal and civil proceedings .... A civil proceeding ... is not rendered criminal in character by the fact that the acts are punishable as crimes.

*United States v. Cappetto,* 502 F.2d 1351, 1357 (7th Cir.1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1979).

The RICO Act was, to a large extent, modeled after the antitrust laws. *See* 95 Harv.L.Rev., *supra* at 1111–12. All of defendants' contentions apply with equal force to the antitrust laws which provide for both criminal and civil enforcement. The constitutionality of the antitrust laws is not in doubt. Defendants have not sought to distinguish the dual enforcement

scheme contained in the antitrust laws from that contained in RICO, nor is such a distinction readily apparent to the court. As such, defendants' constitutional challenges to RICO are also rejected.

To conclude, the court finds that plaintiffs have stated a valid cause of action under RICO, that they have standing to sue under the statute, and that the Act is constitutional both on its face and as applied to the facts of this case. Accordingly, it is this 18th day of May, 1983, by the United States District Court for the District of Maryland, ORDERED:

1. That defendants' Motion to Dismiss be, and the same is, hereby DENIED; and

2. That copies of this Memorandum and Order be sent to counsel for the parties.