**ALL RISKS, LTD., Plaintiff,**

v.

**The EQUITABLE LIFE ASSURANCE SOCIETY of the UNITED STATES, et al., Defendants.**

**No. S 95–3998.**

United States District Court, D. Maryland, Northern Division.

July 3, 1996.

Gerald M. Katz, Thomas J. Gisriel, Hodes, Ulman, Pessin ·& Katz, PA, Towson, MD, for Plaintiff.

Barrett W. Freedlander, Weinberg & Green, Baltimore, MD, for defendants Equitable.

David P. Durbin, Jordan, Coyne & Savits, Washington, DC, for defendant Enoch.

William F. Ryan, Jr., Carmina Perez, Whiteford, Taylor & Preston, Baltimore, MD, For defendant Izett & The Planning Group.

### MEMORANDUM OPINION AND ORDER

SMALKIN, District Judge.

Currently before the Court are motions to dismiss the plaintiff's amended complaint filed by all of the defendants, Equitable Life Assurance Society of the United States [Equitable Life], Equitable Variable Life Insurance Company [Equitable], Scott Enoch, James Izett, and The Planning Group, Inc. The motions have all been fully briefed. No oral hearing is necessary. Loc.R. 105.6 (D.Md.).

## I. *The Amended Complaint*

This case arises out of All Risks' adoption of a 401(k) defined contribution employee benefit plan. According to the amended complaint,[1] Scott Enoch and Meade Hinton approached executives of All Risks during the summer of 1992, regarding the possibility of establishing a profit sharing and/or 401(k) plan for the benefit of All Risks' employees through Equitable or Equitable Life. Amend.Compl. at para. 8. At the time that Hinton and Enoch contacted All Risks, All Risks had a defined contribution employee benefit plan through Connecticut Mutual Life Insurance. *Id.* at para. 11. The Connecticut Mutual Plan required All Risks to make substantial "top heavy minimum contributions" during any plan year in which the plan was a "top heavy" plan. *Id.* When Hinton and/or Enoch contacted All Risks on behalf of Equitable and/or Equitable Life, All Risks made it clear that it would purchase a plan from Equitable and/or Equitable Life *only* if key employees could make contributions without subjecting All Risks to top heavy minimum contribution rules. *Id.* at paras. 12 and 13.

On or about July 16, 1992, Hinton and/or Enoch presented to All Risks' executives a proposal to establish a defined contribution employee benefit plan for All Risks' employees. During the presentation, Enoch and Izett, on behalf of Equitable and/or Equitable Life, represented that the Equitable Plan, unlike the Connecticut Mutual Plan, would "(i) allow key employees to make contributions to the Plan from their compensation ... and (ii) not require "top heavy minimum contributions" to be made by All Risks to the plan." *Id.* at para. 15. Enoch and/or Izett also told All Risks that, if they accepted Equitable's offer, they would receive the plan administration services of Izett and his company, The Planning Group, and that Equitable would compensate Izett for his services. *Id.* at para. 16. Izett represented that he was skilled and knowledgeable in the field of employee benefit plan administration. *Id.* at para. 17.

Before All Risks purchased the Equitable Plan, All Risks requested plan proposals from a number of other companies and asked for information on the applicability of the top heavy rules to such plans. *Id.* at para. 18. No other company offered a plan that was not subject to "top heavy minimum contribution" requirements. *Id.* at para. 18.

Ultimately, All Risks established a 401(k) Profit Sharing Plan and Trust through Equitable. *Id.* at para. 22. All Risks based its decision to purchase the Equitable Plan in large part on "the representations made ... by Enoch and/or Izett, on behalf of Equitable and/or Equitable Life, regarding the applicability of the top heavy minimum contribution rules." *Id.* at para. 19. Enoch's and Izett's representations regarding the Plan's top heavy minimum contribution rules, however, did not pan out. In fact, the Equitable Plan was a 401(k) Plan, and, according to the amended complaint, 401(k) plans require substantially greater minimum contributions to be made by an employer than any other defined contribution plan." *Id.* at para. 19. Moreover, Enoch and Izett both allegedly knew that their representations were false or made the representations with a flagrant disregard for the truth. *Id.* at paras. 37 and 43.

Shortly after the adoption of the Plan, All Risks learned of problems, errors, and omissions involving the administration of the plan by Izett and/or The Planning Group. *See id.* at para. 29. All Risks, therefore, became concerned that the Plan was not being administered properly and that the representations made by Enoch and Izett, in their capacity as Equitable's agents, may not have been true. *Id.* at para. 9. Accordingly, All Risks hired Retirement Plan Administrative Services, [RPAS] an expert in the field of plan administration. After examining the Plan, RPAS informed All Risks that the Plan failed numerous requirements imposed by ERISA and that the problems had to be promptly corrected. "The most devastating problem discovered by RPAS was that the Plan was not only subject to the 'top heavy minimum contribution' requirements, but

---

1. Because the case is currently before the Court on defendants' motions to dismiss, the Court "must take all well pleaded material allegations of the complaint as admitted." *De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir.1991).

also substantial additional contributions were required under the 401(k) rules." *Id.* at para. 32. Since the Plan's establishment, All Risks has made over $100,000 in minimum contributions, even though Enoch told All Risks it would not have to make such minimum contributions. *Id.* at para. 11.

On April 15, 1996, All Risks, Ltd., filed an Amended Complaint against Equitable Life, Equitable, Scott Enoch, James Izett, and The Planning Group, Inc., alleging: (1) intentional misrepresentation, (2) negligent misrepresentation, (3) professional negligence, (4) breach of contract, and (5) unjust enrichment.

The defendants have all filed motions to dismiss plaintiff's amended complaint, asserting that all of the plaintiff's state law claims are preempted by ERISA and, in the alternative, that the plaintiff has failed to state a claim upon which relief can be granted.

## II. *Preemption*

■ The Federal Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq., (ERISA), "is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans" by regulating the administration of such plans. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). Section 514(a) of ERISA, 29 U.S.C. 1144(a), preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.[2] "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw,* 463 U.S. at 97, 103 S.Ct. at 2900. "Under this 'broad common-sense meaning,' a state law may 'relate to' a benefit plan and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 482–83, 112 L.Ed.2d 474 (1990) (*quoting Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987)).

■ There are, however, limits to the breadth of ERISA's preemption. Indeed, "some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw,* 463 U.S. at 85, 103 S.Ct. at 2890. Accordingly, in *Mackey v. Lanier Collection Agency Service. Inc.,* 486 U.S. 825, 831, 108 S.Ct. 2182, 2186, 100 L.Ed.2d 836 (1987), the Supreme Court held that ERISA did not preempt Georgia's general garnishment statute, even though the statute was used to collect judgments against plan participants. In so holding, the Court stated that "lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan—are relatively commonplace, ... and are not preempted by ERISA." *Id.* at 833, 108 S.Ct. at 2187. And in *Pizlo v. Bethlehem Steel Corp.,* 884 F.2d 116, 120 (4th Cir.1989), the Fourth Circuit held that state law claims for breach of contract, promissory estoppel and negligent misrepresentation were not preempted by ERISA. In *Pizlo,* former and present employees of Bethlehem Steel sued the company, alleging that the company breached an oral contract of employment for a term and seeking the employee benefits that they would have been entitled to had the alleged employment contract not been breached. *Id.* at 120. Even though damages in the case would have been measured in part by the benefits that the plaintiffs would have received if the plaintiffs prevailed, the Court held that the claims did not "relate" to an employee benefit plan, stating:

> The claims here would not submit Bethlehem to 'conflicting employer obligations and variable standards of recovery', 'determine whether any benefits are paid' nor 'directly affect the administration of benefits under the plan.' ... The claims do not bring into question whether the plaintiffs are eligible for plan benefits, but whether they were wrongfully terminated from employment after an alleged oral contract of employment for a term.

---

**2.** The term State law includes "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1).

*Id.* at 120 (quoting *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 800 (9th Cir.1987)).

In deciding the preemption issue, the critical determination that this Court must make is whether the plaintiff's state law claims "relate to" an ERISA plan or whether they are "too tenuous, remote, or peripheral a matter to warrant a finding that they 'relate[ ] to' the plan." *Shaw*, 463 U.S. at 100, 103 S.Ct. at 2901. The plaintiff's claims basically fall into two categories: (1) claims relating the defendants' alleged improper administration of the Plan, and (2) claims relating to the alleged misrepresentations that Enoch and Izett, acting as agents of Equitable, Equitable Life, and The Planning Group, made to All Risks regarding the top heavy status of the Equitable Plan in order to induce All Risks to buy the Plan.

■ ERISA clearly preempts plaintiff's claims alleging improper administration of the Plan. In *Tri–State Machine Inc. v. Nationwide Life Ins. Co.*, 33 F.3d 309, 311 (4th Cir.), *cert. denied.* —— U.S. ——, 115 S.Ct. 1175, 130 L.Ed.2d 1128 (1995), the Fourth Circuit held that ERISA preempted state law claims alleging that the defendant "failed to administer ... an employee benefit plan according to the terms of the agreement and mismanaged the claims processing procedure." *See also Custer v. Pan American Life Insurance*, 12 F.3d 410, 420 (4th Cir. 1993) (holding that plaintiff's claims under West Virginia law relating to improper claim processing or administration are preempted by ERISA); *Pilot Life Insur. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). In Tri–State, the court wrote:

> There can be little doubt that the claims *relate to* the plan. Tri–State's complaint particularizes a list of wrongs committed by Nationwide Life, including its paying claims to wrong medical providers, issuing coverage cards in the name of employees never associated with Tri–State, ... pay-

ing claims not covered, denying claims that were covered, and delaying processing of claims in a year when the stop-loss limit had been reached in order to deflect them into a new policy year to be charged against Tri–State under its self-funding obligations. All of these allegations are essentially complaints about the processing of claims under an employee benefit plan, and, therefore, *relate to* the plan in the common sense meaning of that phrase.

33 F.3d at 314.

Like the complaint in *Tri–State*, the amended complaint in this case contains a list of particular wrongs allegedly committed by James Izett and/or The Planning Group in administering the All Risks Plan. Amend. Compl. at para. 29.[3] The claims in Counts XI, XII, and XIII are based on such allegations of improper administration. For example, in Count XI the plaintiff alleges that "[b]y failing to properly administer the Plan ... [the defendants] negligently breached the duty owed to All Risks to act with the reasonable care and skill of a professional qualified plan consultant." *Id.* at para. 94. Similarly, in Count XII, the breach of contract claim, the plaintiff alleges that "the failure of the Defendants to properly undertake the administrative duties which they agreed to perform constitutes a material breach of this contract with All Risks." *Id.* at paras. 98 and 99. And finally, in Count XIII, the unjust enrichment claim, the plaintiff alleges that

> [t]he failure by Enoch, Izett and/or The Planning Group to properly perform Plan administration services make it inequitable for any of the Defendants to retain the benefits of the sale of the Plan without compensating All Risks for the damages it suffered as a result of the failure by the Defendants to properly administer the Plan.

*Id.* at para. 103.

■ Unlike the claims in *Tri–State* and *Custer*, the claims in Counts XI through XIII

---

**3.** Specifically, the plaintiff alleges that Izett, acting on behalf of Equitable, Equitable Life and The Planning Group (1) did not prepare the necessary filings for the Plan, (2) "directed rollover distributions be made in an incorrect amount," (3) "directed distributions from an account in the name of the individuals who had no money in such account," (4) "failed to maintain accurate and complete records," and (5) allowed employee contributions that were deposited in the wrong account to lie dormant so that the employees earned nothing on their contributions for a period of time. Amend.Compl. at para. 29.

in plaintiff's amended complaint are not based on alleged improper claim processing. Nevertheless, the claims clearly are based on Izett .and The Planning Group's improper administration of the All Risks Plan, and, therefore, *relate to* the Plan.[4] Accordingly, ERISA preempts the claims in Counts XI, XII, and XIII of the plaintiff's amended complaint.[5]

The question of whether ERISA preempts the plaintiff's misrepresentation claims, as alleged in Counts I through X,[6] is a more difficult one. The Fourth Circuit has not specifically addressed whether ERISA preempts misrepresentation claims arising from the sale of employee benefit plans. The Circuits that have specifically addressed this issue are split.

In particular, the Eleventh and the Eighth Circuits have held that ERISA preempts such claims. *See Consolidated Beef Industries Inc. v. New York Life Insurance Co.,* 949 F.2d 960 (8th Cir.), *cert. denied,* 503 U.S. 985, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992); *Farlow v. Union Central Life Insurance Co.,* 874 F.2d 791 (11th Cir.1989). In *Farlow,* the Eleventh Circuit held that ERISA preempted both a negligence and a misrepresentation claim brought by the beneficiaries of an employee health insurance plan against the insurer and against the agent who sold the plan. The beneficiaries claimed that the agent made misrepresentations regarding the plan and its benefits to induce them to purchase the plan. "Finding the Farlows' state law claims not wholly remote in content from the ... plan, [the Court rejected] the Farlows' contention that simply because their claims involve[d] misconduct in the sale and

---

4. The plaintiff's reliance on *Painters Philadelphia Dist. Council No. 21 Welfare Fund v. Price Waterhouse,* 879 F.2d 1146, 1153 n. 7 (3d Cir.1989) and *Airparts Co., Inc. v. Custom Benefits Services of Austin, Inc.,* 28 F.3d 1062 (10th Cir.1994), to support its argument that its professional negligence claim is not preempted is misplaced. As Izett and The Planning Group recognized in their reply memorandum, (Rep.Mem. at 4), *Painters* and *Airparts* did not involve claims against individuals who allegedly administered an employee benefits plan. Rather, *Painters* involved a claim against an independent accounting firm and arose out of the firm's alleged negligent audit of the plan. 879 F.2d at 1147. Similarly, *Airparts* involved a claim against an outside consultant that was providing advice to the administrators of an employee benefit plan. In *Airparts,* the Tenth Circuit specifically noted that the defendant in the case "did not directly perform any administrative act vis-a-vis the plan," and emphasized that claims based on the negligent administration of a Plan are preempted. *Id.* at 1066.

Although the plaintiff asserts in its opposition memorandum that its amended complaint does not involve "a claim against a plan administrator," (Pl's Opp.Mem. at 5), and alleges in a few paragraphs in Count XI that Izett, as an agent of the Planning Group, was just a "plan consultant," it is clear from the rest of the amended complaint that Izett and The Planning Group were directly performing administrative acts. Indeed, the claims in Counts XI, XII, and XIII, are based on Izett and the Planning Group's alleged negligence in *administering* the All Risks Plan. Consequently, those claims are preempted.

5. The fact that the defendants in this case may not be plan fiduciaries does not alter the preemption analysis with respect to the claims in Counts XI through XIII. In *Custer,* the parties assumed that the defendants were not fiduciaries. 12 F.3d at 418. The parties based their assumption on a disclaimer in the group policy that provided, "neither ... [National Insurance,] ... not the insurer ... [is] deemed to be a 'named fiduciary' or 'Plan Administrator' as defined in ERISA." *Id.* at 418 n. 3. Although the court questioned whether such an assumption could be made without looking at the functions that were performed by the defendants, the court concluded that it did not have to decide whether the defendants were fiduciaries because the determination was ' irrelevant to its preemption analysis. *Id.* Later, the court noted that "all other courts of appeals that have considered the question agree that state causes of action asserted against nonfiduciaries are preempted by ERISA." *Id.* at 419.

Accordingly, even if the defendants in this case are not fiduciaries, the plaintiff's claims alleging improper administration of the Plan are nonetheless, preempted.

6. In Counts I through X, the plaintiff alleges that Enoch, acting within the scope of his agency relationship with Equitable and Equitable Life, and Izett, acting within the scope of his agency relationship with Equitable, Equitable Life, and The Planning Group, negligently and intentionally represented to All Risks' executives that All Risks would not have to make top heavy minimum contributions to Equitable's Plan. The plaintiff further asserts that such representations, which were made prior to All Risks' adoption of the Plan, were false and were made by Enoch and Izett intentionally to induce All Risks to purchase Equitable's Plan. Amend Compl. paras. 35–86.

implementation of the ... plan, their claims d[id] not relate to the plan." *Id.* at 794.[7] Similarly, relying on *Farlow,* the Eighth Circuit, in a case factually similar to this case, *Consolidated Beef Industries Inc. v. New York Life Insurance Co.,* 949 F.2d 960 (8th Cir.1991), held that ERISA preempted a misrepresentation claim that arose out of the purchase of 401(k) plan. Although the court found that the plaintiffs' primary concern was whether the Plan was properly administered, the Court held *"even if* CBI's claims involved misrepresentation in the sale of the 401(k) plan, its claims still relate to an employee benefit plan." *Id.* at 964. *See also Pohl v. National Benefits Consultants, Inc.,* 956 F.2d 126, 128 (7th Cir.1992).

Conversely, the Fifth and the Sixth Circuits have held that ERISA does not preempt misrepresentation or fraudulent inducement claims based on false representations regarding the terms or nature of an employee benefit plan allegedly made prior to the sale or adoption of the plan. *See Perkins v. Time Insurance Co.,* 898 F.2d 470 (5th Cir.1990); *Perry v. P\*I\*E Nationwide Inc.,* 872 F.2d 157 (6th Cir.), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1068 (1990). In *Perkins,* the Fifth Circuit held that ERISA did not preempt a claim that an insurance agent fraudulently induced an insured to surrender coverage under an existing policy in order to participate in a plan, which ultimately did not provide the promised coverage.[8] In so holding, the court stated:

While ERISA clearly preempts claims of bad faith as against insurance companies for improper processing of a claim for benefits under an employee benefit plan, *Pilot Life,* ... we are not persuaded that this logic should extend to immunize agents from personal liability for their solicitation of potential participants in an ERISA plan prior to its formation. Giving the ERISA 'relates to' preemption standard its common-sense meaning, ... we conclude that a claim that an insurance agent fraudulently induced an insured to surrender coverage under an existing policy, to participate in an ERISA plan which did not provide the promised coverage, 'relates to' that plan only indirectly. A state law claim of that genre, which does not affect the relations among the principal ERISA entities (the employer, the plan fiduciaries, the plan, and the beneficiaries) as such is not preempted by ERISA.

*Id.* at 473; *See also Perry,* 872 F.2d 157 (6th Cir.1989) (holding that state claims brought by employees against employer alleging fraudulent inducement to participate in an ERISA plan are not preempted by ERISA); *Smith v. Cohen Benefit Group Inc.,* 851 F.Supp. 210, 213–214 (M.D.N.C.1993) (holding that claims for fraud and negligent misrepresentation are not preempted by ERISA).

This Court finds the reasoning of the Fifth Circuit in *Perkins* to be far more persuasive than the reasoning of the Eleventh Circuit in *Farlow.*[9] Indeed, the question whether ERISA preempts a particular state

---

**7.** For obvious reasons, the defendants rely heavily on *Farlow* to support their argument that the plaintiff's misrepresentation claims are preempted. The continued vitality of *Farlow,* however, is in question. In fact, the Eleventh Circuit has decided to review en banc the decision in *Morstein v. National Insurance Services, Inc.,* 74 F.3d 1135 (11th Cir.1996), *rehearing granted and opinion vacated,* 81 F.3d 1031 (11th Cir. April 11, 1996), a case factually similar to and governed by *Farlow.* The Eleventh Circuit vacated *Morstein* to review en banc the holding in *Farlow.* The case is currently pending. 81 F.3d 1031.

**8.** Perkins also sued the insurance company, Time, alleging tortious breach of contract. The court held that the breach of contract claim against Time was preempted by ERISA. *Id.* at 473.

**9.** As Judge Goodwin, urging the Eleventh Circuit to reconsider *Farlow,* stated in his concurrence in *Morstein v. National Insurance Services, Inc.,* 74 F.3d 1135 (11th Cir.1996), *rehearing granted and opinion vacated,* 81 F.3d 1031 (11th Cir. 1996):

Given the demonstrated difficulty faced by district courts, and the very real *possibility* that *Perkins* is more consistent than *Farlow* with federalism, state anti-twisting statutes, and the intent to benefit workers, which underlies the ERISA scheme, it may be timely and appropriate to suggest an en banc review of the preemption matter.

*Id.* at 1140.

law or claim is ultimately a question of congressional intent, *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), and it is clear that allowing state claims based on alleged false representations made prior to the adoption or sale of employee benefits plans will in no way raise the type of concerns that prompted Congress to enact ERISA's preemption provision.

■ Congress enacted ERISA's comprehensive preemption provision to "eliminat[e] the threat of conflicting or inconsistent State and local regulation of employee benefit plans." *Shaw*, 463 U.S. at 98, 103 S.Ct. at 2901. (quoting the comments of Senator Williams, 120 Cong.Rec. at 29933). Recognizing that it would be difficult for an employer to establish a uniform scheme to administer employee benefit plans "if .... [the] plan [was] ... subject to differing regulatory requirements in differing States," *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9, 107 S.Ct. 2211, 2216, 96 L.Ed.2d 1 (1987), Congress enacted ERISA's preemption provision " 'to minimize [state regulatory] interference with the administration of employee benefit plans,' so that employers would not have to 'administer their plans differently in each State in which they have employees ...' " *Id.* at 10, 107 S.Ct. at 2217 (quoting *Shaw*, 463 U.S. at 105, 103 S.Ct. at 2904). "Preemption ensures 'that the administrative practices of a benefit plan will be governed by only a single set of regulations." *Id.* 482 U.S. at 11, 107 S.Ct. at 2217.

■ The misrepresentation claims in this case are claims of general application that make no reference to ERISA, and, in fact, function irrespective of ERISA. They are based on the pre-plan conduct of Enoch and Izett, acting as agents of Equitable, Equitable Life, and The Planning Group, and will in no way affect the administration of the plan or subject the plan to conflicting regulations which will destroy the uniform administration of the plan. Indeed, application of Mary-

land's law on misrepresentation will not result in any regulation of the Plan. Accordingly, such claims in no way raise the types of concerns that prompted Congress to enact ERISA's preemption provision. *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9–11, 107 S.Ct. 2211, 2216–17, 96 L.Ed.2d 1 (1987); *Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 120. *See also Airparts Co., Inc. v. Custom Benefits Services of Austin, Inc.*, 28 F.3d 1062, 1066 (10th Cir.1994) (holding that ERISA does not preempt claims for negligence and fraud against a consultant to plan administrators and noting that "these claims will not affect the structure, the administration, or the type of benefits provided by the plan"); *Perkins*, 898 F.2d at 470; *Smith v. Cohen Benefit Group, Inc.*, 851 F.Supp. 210 (M.D.N.C.1993); *Martin v. Pate*, 749 F.Supp. 242 (S.D.Ala.), *aff'd without op. sub nom. Martin v. Continental Investors*, 934 F.2d 1265 (11th Cir.1991).

■ Moreover, the mere fact that the subject of the alleged misrepresentations concerns the top heavy minimum contribution requirements governing the Plan does not render the misrepresentation claims sufficiently "related to" the benefit plan to warrant preemption. Focusing on the factors that the Fourth Circuit relied on in *Pizlo* to determine whether the plaintiffs' breach of contract and negligent misrepresentation claims "related to" an ERISA plan, it is clear that the misrepresentation claims in this case are not sufficiently related to the ERISA plan to warrant preemption. Indeed, like the claims in *Pizlo*, the claims in this case will "not submit [All Risks] to 'conflicting employer obligations and variable standards of recovery', 'determine whether any benefits are paid' nor 'directly affect the administration of benefits under the plan.'" *Pizlo*, 884 F.2d at 120.

Finally, although the Fourth Circuit has not explicated a test to determine whether a state law or state claim "relates to" an ERISA plan,[10] both the Ninth Circuit and the Tenth Circuit have done so. Under the

---

**10.** Izett and The Planning Group argue that the Fourth Circuit's holding in *Elmore v. Cone Mills Corp.*, 23 F.3d 855 (4th Cir.1994) "strongly suggests that the Fourth Circuit would reach the same holding as the Eight [sic] and Eleventh

Circuits in *Consolidated Beef Industries, Inc.* and *Farlow*." (Izett's and the Planning Group's 6/5 Rep.Mem. at 5) (citations omitted). In *Elmore*, the Fourth Circuit held that claims arising out of the purported representations made by an em-

test established in the Ninth and Tenth Circuits, the misrepresentation claims in this case are not preempted. Specifically, the Ninth and the Tenth Circuits have held that ERISA preempts:

> (1) laws that regulate the type of benefits or terms of ERISA plans, (2) laws that create reporting, disclosure, funding, or vesting requirements, (3) laws that provide rules for calculation of the amount of benefits to be paid under ERISA plans, and (4) laws that provide remedies for misconduct growing out of the administration of ERISA plans.

*Farr v. U.S. West Inc.*, 58 F.3d 1361, 1365 (9th Cir.1995), *Airparts Co. v. Custom Benefit Services of Austin Inc.*, 28 F.3d 1062 (10th Cir.1994). The misrepresentation claims in this case do not fall within any of these four categories of laws.

The misrepresentation claims in Counts I through X are based on the alleged misrepresentations that Enoch and Izett, acting as agents of Equitable, Equitable Life, and The Planning Group, made to All Risks regarding the top heavy status of the Equitable Plan in order to induce All Risks to buy the Plan. Such claims, which do not affect the administration of the plan, the type of benefits to be provided, or the relations among the principal ERISA entities, (the employer, the plan fiduciaries, the plan, and the beneficiaries), relate to the ERISA plan only indirectly. Accordingly, such claims are not preempted by ERISA.[11]

### III. *Failure to Plead Fraud with Particularity and Failure to State a Claim*

The defendants seek a dismissal of All Risks' claims for intentional misrepresentation, *i.e.* Counts I through V, on the ground that they "are fatally defective ... in that they fail to allege the elements of fraud with specificity as required by Rule 9(b) of the Federal Rules of Civil Procedure." (Izett and The Planning Group's 5/6/96 Mem. at 18).

Federal Rule of Civil Procedure 9(b) provides: "In all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity." The circumstances refer to "the time, place, and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby." *Windsor Associates, Inc. v. Greenfeld*, 564 F.Supp. 273, 280 (D.Md.1983). Rule 9(b), however, must also be read in conjunction with Rule 8(a), which requires only a "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* "The central question which always arises when a complaint has been attacked under Rule 9(b) is how much detail is necessary to give adequate notice to the opposing party in order to enable that party to prepare adverse pleadings." *PPM America v. Marriott Corp.*, 820 F.Supp. 970 (D.Md.1993).

After reviewing the plaintiff's amended complaint and the arguments of the parties, the Court concludes that the plaintiff's amended complaint complies with the particularity requirements of Rule 9(b). In its 27 page amended complaint the plaintiff has identified the time period in which the

---

ployer to its employees prior to the adoption of an Employee Stock Ownership Plan were preempted by ERISA.

Although the claims in *Elmore* are similar to the claims in this case, the effect that the claims would have had on the plan in *Elmore* is very different from the effect that the claims would have on the Plan in this case. As the district court in its opinion in *Elmore* noted, the claims in that case "deal[t] with the employee benefits [that] the class claim[ed] that it was promised." 1990 WL 169783 at *10. Moreover, "the damages [the] plaintiffs.... sought [were] the benefits they allege they should have received." *Id.* Finally, "the recovery plaintiffs [sought] would [have] involved an enormous overhaul of the 1983 ESOP." *Id.* Consequently, the claims in the *Elmore* case would have subjected the "the plan and its future administration ... to profound interference." *Id.*

In this case, the claims do not involve employee benefits and will in no way affect the administration of the Plan. *Elmore*, therefore, is not helpful.

**11.** In this opinion, the Court only addresses the preemption issue generally. There still remain issues regarding whether Equitable, Equitable Life, and The Planning Group can be held liable for the misrepresentations allegedly made by Enoch and Izett.

alleged misrepresentations were made, the content of the misrepresentations, and for the most part, the person or persons who made the alleged misrepresentations. Specifically, the plaintiffs allege that during a sales pitch in July, 1992, Enoch and/or Izett, acting on behalf of Equitable, Equitable Life and The Planning Group "represented to All Risks that the Plan ... would (i) allow key employees to make contributions to the Plan from their compensation ... and (ii) not require 'top heavy minimum contributions' to be made by All Risks to the Plan." Amend. Compl. at para. 15 The plaintiffs further allege that during the July, 1992 sales pitch and in subsequent conversations Enoch and/or Izett represented that All Risks would receive the plan administration services of Izett, who was skilled and knowledgeable in the field of employee benefit plan administration. *Id.* at paras. 16 and 17.

The fact that the plaintiff did not identify precisely what representations Enoch made and what representations Izett made is not fatal. The amended complaint in this case is not like the complaint in *Wang Laboratories, Inc v. Burts,* 612 F.Supp. 441, 445 (D.Md. 1984), which "[did] not allege, even in general terms, the relationship of the individual defendants to the purported scheme." [12] Rather, All Risks' amended complaint, like the complaint in *Windsor Associates,* "is sufficiently laden with particulars to apprise the defendants of the ... [time and nature of the misrepresentations they allegedly made] and what was obtained thereby." 564 F.Supp. at 280. Accordingly, defendants' motions to dismiss Counts I though V for lack of specificity are *denied.*

 Similarly, the defendants' motion to dismiss Counts I through X for failure to state a claim upon which relief can be granted is *denied.*[13] The Court's present obligation is to determine the legal sufficiency of the plaintiff's claims, rather than to make any determinations as to its merits. The plaintiff's amended complaint properly alleges in Counts I through X every element of the intentional and the negligent misrepresentation claims and the factual allegations in support of the claims are sufficient to survive a 12(b)(6) motion.[14]

### IV. *Motion For a Jury Trial*

The plaintiff is entitled to a jury trial. The only claims remaining are state misrepresentation claims. There are no ERISA claims alleging, for example, breach of fiduciary duty. The rule in *Berry v. Ciba–Geigy Corp.,* 761 F.2d 1003, 1006, 1007 (4th Cir.1985), therefore, does not apply.

### V. *Conclusion*

For the foregoing reasons, the defendants' motions to dismiss Counts I through X are *denied.* The defendants' motions to dismiss Counts XI through XIII of the plaintiff's amended complaint are *granted.*

All the above SO ORDERED.

---

**12.** In the complaint in *Wang,* "[o]ther than the defendants' respective positions with the corporations, ... there [wa]s no allegation of their individual participation in the alleged fraud. Instead, Wang group[ed] all twelve defendants together under the heading of 'defendants' in three conclusory paragraphs." 612 F.Supp. at 445.

**13.** A Rule 12(b)(6) motion must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of ... [its] claim which would entitle ... [it] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted); *accord Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.), *cert. denied,* 510 U.S. 1197, 114

S.Ct. 1307, 127 L.Ed.2d 658 (1994). Accordingly, "[t]he court, in deciding a 12(b)(6) motion, must take all well pleaded material allegations of the complaint as admitted and view them in the light most favorable to the plaintiff." *De Sole v. United States,* 947 F.2d 1169, 1171 (4th Cir. 1991).

**14.** The representations that the Plan would not be subject to the "top heavy minimum contribution requirements," if true, are false representations of a material fact. They are not predictive or promissory statements nor are they statements of opinion. *See Miller v. Fairchild Industries,* 97 Md.App. 324, 343, 629 A.2d 1293, *cert. denied,* 333 Md. 172, 634 A.2d 46 (1993).