CENTRAL LABORERS WELFARE FUND, et al., Plaintiffs,

v.

PHILIP MORRIS INC., et al., Defendants.

No. Civ. 97–568–GPM.

United States District Court, S.D. Illinois.

Nov. 30, 1998.

L. Thomas Lakin, Lakin Law Firm, Wood River, IL, for plaintiffs.

David B. Love, Thomas J. Frederick, Dan K. Webb, Winston & Strawn, Chicago, IL, Lisa A. Pake, Alan C. Kohn, Kohn, Sands et al., St. Louis, MO, Lawrence R. Desideri, Chicago, IL, for Philip Morris, Inc.

Thomas F. Gardner, Jones, Day, et al., Chicago, IL, for R.J. Reynolds Tobacco Co.

Andrew R. McGaan, James C. Munson, Kirkland & Ellis, Chicago, IL, for Brown & Williamson Tobacco Corp.

Adam I. Stein, Mark G. Cunha, Simpson, Thacher et al., New York City, Stephen M. Schoenbeck, Lathrop, Gage et

al., St. Louis, MO, for B.A.T. Industries PLC.

Kurt E. Reitz, J. William Newbold, III, Thompson Coburn, Belleville, IL, for Lorillard Tobacco Co., Inc.

James A. Morsch, Harold C. Wheeler, Butler, Rubin et al., Chicago, IL, Michael M. Fay, Kasowitz, Benson et al., New York City, for Liggett Group, Inc.

Kenneth J. Mallin, Rodney W. Ott, Bryan Cave, St. Louis, MO, Michael E. Wiles, Christopher M. Green, R. Townsend Davis, Debevoise & Plimpton, New York City, for Council for Tobacco Research USA Inc.

Larry E. Hepler, Burroughs, Hepler et al., Edwardsville, IL, Deborah L. Kuhn, Altheimer & Gray, Chicago, IL, for Tobacco Institute, Inc.

Richard E. Boyle, Thomas R. Peters, Gundlach, Lee, et al., Belleville, IL, David B. Love, Winston & Strawn, Chicago, IL, for Smokeless Tobacco Council, Inc.

Thomas E. Jones, Walker & Williams, Belleville, IL, for Weeke Wholesale Co., Dearborn Wholesale Grocers, Inc., World Wide Tobacco, Inc., Zenith Tobacco Corp., Republic Tobacco Management Corp.

Michael T. Hannafan, Cory A. Johnson, Chicago, IL, Aime L. Hendricks, Thomas J. McCormack, Chadbourne & Parke, New York City, for British American Tobacco Co., Ltd.

Shevon L. Harris, Lewis, Rice et al., St. Louis, MO, Michael C. Lasky, Davis & Gilbert, New York City, for Hill & Knowlton, Inc.

## MEMORANDUM AND ORDER

MURPHY, District Judge.

This matter is before the Court on its own motion to reconsider its order of March 16, 1998, (Doc. 60) denying the Plaintiffs' motion to remand (Doc. 19). For the following reasons, the Court vacates its order of March 16, 1998, (Doc. 60)

and grants the Plaintiff's motion to remand (Doc. 19).

## BACKGROUND

On May 30, 1997, the Plaintiffs, fourteen named multi-employer health and welfare funds and their respective trustees, filed suit, on behalf of themselves and all others similarly situated, in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois (the state court) (Doc. 2). In their seven count class action complaint, the Plaintiffs named as Defendants six major tobacco manufacturers (the Manufacturer Defendants), four tobacco trade associations (the Trade Association Defendants), and five Illinois tobacco distributors (the Distributor Defendants).

The Plaintiffs are citizens of Illinois. The Manufacturer and Trade Association Defendants are citizens of states other than Illinois and, therefore, are diverse Defendants. However, the Distributor Defendants are citizens of Illinois, and therefore, are nondiverse Defendants.

In the complaint, the Plaintiffs seek recovery from the Defendants for moneys they expended for smoking related illnesses incurred by their participants. The complaint alleges a violation of the Illinois Antitrust Act, 740 ILCS 10/1 et seq.; common law fraud and misrepresentation; a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.; intentional and negligent breach of a special duty; breach of express and implied warranties; and unjust enrichment.

On June 6, 1997, prior to effecting service on any of the Defendants, the Plaintiffs, with leave of court, filed a first amended complaint (Ex. A. to Doc. 19). The first amended complaint does not substantively alter the original complaint. Rather, the first amended complaint adds two additional funds as Plaintiffs and four diverse tobacco entities as Defendants. None of the Defendants was served with notice of the Plaintiffs' motion for leave to amend, the state court's order granting the Plaintiffs' motion for leave to amend, or the first amended complaint. In fact, according to the Defendants, none of the Defendants learned of the existence of the first amended complaint until the Plaintiffs filed their motion to remand in this Court.

It is unclear from the record, but the diverse Defendants named in the original complaint somehow received notice of the action pending against them in state court and obtained a copy of the original complaint. Accordingly, on June 30, 1997, all of the diverse Defendants named in the original complaint filed their notice of removal (Doc. 1). Neither the nondiverse Distributor Defendants named in the original complaint nor the additional diverse Defendants named in the first amended complaint joined in the removal petition.

In the removal petition, the Defendants invoke this Court's subject matter jurisdiction in two ways. First, the Defendants allege that this Court has diversity jurisdiction under 28 U.S.C. § 1332 because the nondiverse Distributor Defendants were fraudulently joined. Second, the Defendants allege that this Court has federal question jurisdiction under 28 U.S.C. § 1331 because the Plaintiffs' claims relate to an employee benefit plan and therefore arise under the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1001 et seq., and because the Plaintiffs' claims are completely preempted under § 502(a) of ERISA, 29 U.S.C. § 1132(a).

On July 30, 1997, the Plaintiffs timely filed their motion to remand this action to state court pursuant to 28 U.S.C. § 1447 (Doc. 19) and their memorandum in support thereof (Doc. 20). The Plaintiffs offer three arguments in support of their motion to remand. First, the Plaintiffs argue that this Court lacks diversity jurisdiction because the Distributor Defendants were not fraudulently joined. Second, the Plaintiffs argue that their claims against the Defendants are not preempted by ERISA. Third, the Plaintiffs argue that the notice

of removal is procedurally defective because not all of the named Defendants, exclusive of the named Distributor Defendants which the Defendants claim were fraudulently joined, joined in the notice of removal.

On August 18, 1997, the Defendants filed a memorandum in opposition to the Plaintiffs' motion to remand (Doc. 25), and on August 22, 1997, the Plaintiffs filed a reply (Doc. 27). On December 16, 1997, the Defendants filed supplemental authority in opposition to the Plaintiffs' motion to remand (Doc. 37), and on March 16, 1998, the Plaintiffs filed supplemental authority in support of their motion to remand (Doc. 59).

On March 16, 1998, the Honorable William D. Stiehl, District Judge, entered an order (Doc. 60) denying the Plaintiffs' motion to remand (Doc. 19). On April 24, 1998, this case was reassigned to the undersigned Judge for all further proceedings. A hearing on all pending motions was scheduled for July 13, 1998. In preparing for that hearing, the undersigned Judge thoroughly reviewed the record in this case. Given the Court's duty to independently review the issue of its subject matter jurisdiction, the undersigned Judge became concerned about the issue of whether the Court actually had subject matter jurisdiction and advised the parties to be prepared to argue the issue at the scheduled hearing. Following the hearing, the Court took the issue of its subject matter jurisdiction under advisement. Since that time, both the Plaintiffs and the Defendants have filed supplemental authority and arguments in support of their respective positions (Docs. 129, 134, 140, 141, 152, 154, 160, 170, 172).

Following a careful review of all of the pleadings and authority submitted by the parties in this case, the Court finds that it lacks subject matter jurisdiction. The Court does not take lightly the fact that in so concluding, it must vacate the prior order of Judge Stiehl. However, if the district court "at any time before final judgment" determines that it lacks jurisdiction, it must remand the case. 28 U.S.C. § 1447(c). The Court respectfully disagrees with Judge Stiehl's ·conclusion that the Distributor Defendants were fraudulently joined and that the claims are completely preempted under ERISA. Accordingly, the Court must remand the case. See 28 U.S.C. § 1447(c).

### ANALYSIS

█ In order for a defendant to properly remove a case to federal court, the court must have jurisdiction over the case. 28 U.S.C. § 1441(a). Jurisdiction exists in a removal action if the case might have been originally brought in a federal court. *Id.* This can be accomplished in either of two ways. First, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Jurisdiction based on § 1331 is known as federal question jurisdiction. *Id.* Second, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different states." 28 U.S.C. § 1332(a). Jurisdiction based on § 1332 is known as diversity jurisdiction. *Id.*

### A. PROCEDURAL DEFECTS IN THE REMOVAL PETITION

As a threshold matter, the Court must first address the Plaintiffs' argument that the Defendants' removal petition is procedurally defective. The Plaintiffs offer two procedural defects as grounds for this Court to remand the case to state court. First, the Plaintiffs claim that the nondiverse Defendants needed to join in the removal petition. Second, the Plaintiffs claim that the additional Defendants named in the first amended complaint also needed to join in the removal petition. Thus, according to the Plaintiffs, the removal petition is procedurally defective because not all of the Defendants joined in it.

■ It is well settled that "[a] petition for removal fails unless all defendants join it." *Roe v. O'Donohue,* 38 F.3d 298, 301 (7th Cir.1994) (*citing Hanrick v. Hanrick,* 153 U.S. 192, 14 S.Ct. 835, 38 L.Ed. 685 (1894) and *Torrence v. Shedd,* 144 U.S. 527, 12 S.Ct. 726, 36 L.Ed. 528 (1892)). In order to "join" the petition for removal, all defendants must support it in writing or explain why written support is unnecessary. *Roe,* 38 F.3d at 301, *citing Northern Illinois Gas Co. v. Airco Indus. Gases,* 676 F.2d 270, 272–73 (7th Cir.1982). However, nominal or formal parties need not join in the removal petition. *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 369 (7th Cir. 1993). A defendant is a nominal party if there is no reasonable basis for predicting that it will be held liable. *Id.*

With regard to the Plaintiffs' first assertion, that the removal petition is defective because the nondiverse Distributor Defendants did not join in it, the Defendants, in their removal petition, adequately explained why it was unnecessary for those nondiverse Distributor Defendants to join in the removal petition. Specifically, the Defendants originally seeking removal asserted that those nondiverse Distributor Defendants were fraudulently joined. Thus, if this Court were to find that the nondiverse Distributor Defendants were in fact fraudulently joined, and therefore nominal parties under *Shaw,* they did not need to join in the removal petition. If, on the other hand, the Court were to find that the nondiverse Distributor Defendants were not fraudulently joined, then the case could[1] be remanded on those grounds. As a result, resolution of the fraudulent joinder issue will resolve any question as to the effect of the failure of the nondiverse Distributor Defendants to join in the removal petition.[2]

The Court turns to the Plaintiffs' second assertion that the failure of the diverse Defendants named in the first amended complaint to join in the removal petition is a procedural defect requiring remand. The Plaintiffs claim that since the diverse Defendants named in the original complaint had notice of the action against them, "due diligence mandates that they ascertain the status of such proceedings at the time of filing their Notice." (Doc. 27, p. 9). According to the Plaintiffs, such an exercise of due diligence would have revealed that the Plaintiffs had filed the first amended complaint. Therefore, the Plaintiffs argue, the Defendants would have been able to obtain that first amended complaint which would have revealed that the Plaintiffs had named additional Defendants. The Plaintiffs argue that all of the Defendants named in the first amended complaint should have then joined in the removal petition. In essence, the Plaintiffs seek to impose a burden on the Defendants who have been served or otherwise have notice of the claim against them to notify all codefendants who have not been served or who otherwise do not have notice of the claim and to get them to join in the petition for removal.

In *Roe,* 38 F.3d at 301, the Seventh Circuit noted that "[a] party may be able to establish that joinder is unnecessary—as it would be if, for example, the nonjoining defendant were a nominal party or had not been served with process...." Implicit in the Court's analysis is the rule that any unserved defendants do not need to join in the petition for removal. *See Gossmeyer,* 128 F.3d at 489.

■ In the present case, at the time of removal, the Plaintiffs had not served the Defendants added in the first amended complaint (nor had they served the Defendants named in the original complaint). Therefore, applying the Court's analysis in *Roe* to the facts of this case, the Court

---

1. Of course, the remand issue also turns on the Court's determination of whether this entire cause of action is preempted by ERISA.

2. In any event, the fact that these Defendants were not served at the time of removal means that they were not required to join in the removal petition. *See Gossmeyer v. McDonald,* 128 F.3d 481, 489 (7th Cir.1997).

finds that the subsequently added diverse Defendants' failure to join in the petition for removal is not a procedural defect requiring remand. Those Defendants, upon discovering the pending litigation against them, immediately sought to join in the petition for removal. As a result, this Court declines the Plaintiffs' invitation to impose a burden on those Defendants who received notice to seek out and notify all codefendants who had not been served or otherwise received notice. Having resolved the threshold procedural issues raised by the Plaintiffs, the Court now turns to the substantive merits of the Plaintiffs' motion to remand.

## B. *FRAUDULENT JOINDER*

The Defendants have first sought to invoke this Court's diversity jurisdiction. " 'For a case to be within the diversity jurisdiction of the federal courts, diversity of citizenship must be "complete" meaning that no plaintiff may be a citizen of the same state as any defendant.' " *Hoosier Energy Rural Elec. Coop., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1314–15 (7th Cir.1994) (*quoting Fidelity & Deposit Co. of Md. v. Sheboygan Falls*, 713 F.2d 1261, 1264 (7th Cir.1983)). If there is a dispute as to whether the Court has diversity jurisdiction on removal, the burden is on the party seeking removal to establish the right. *Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir.1976). Removal questions are to be "strictly construed against federal jurisdiction." *Katonah v. USAir, Inc.*, 868 F.Supp. 1031, 1033 (N.D.Ill.1994). Any defect in the removal procedure, or the lack of subject matter jurisdiction requires remand. *In re Amoco Petroleum Additives Co.*, 964 F.2d 706, 708 (7th Cir.1992).

In their notice of removal, the Defendants allege, and the Plaintiffs do not dispute, that this action satisfies the "amount in controversy" requirement for diversity jurisdiction. It is the diversity of citizenship requirement that is in issue.

The Defendants argue that the Court should disregard the citizenship of the nondiverse Distributor Defendants for the purpose of determining diversity jurisdiction because these Defendants have been fraudulently joined. " 'Diversity jurisdiction cannot be destroyed by joinder of nondiverse parties if such joinder is fraudulent.' " *Hoosier Energy*, 34 F.3d at 1315 (*quoting Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir.1993)). The rule in this Circuit governing fraudulent joinder in removal cases was established in *Poulos v. Naas Foods, Inc.*, 959 F.2d 69 (7th Cir.1992). In *Poulos*, the Court noted that, "[a]lthough false allegations of jurisdictional fact may make joinder fraudulent, in most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success, whatever the plaintiff's motives." 959 F.2d at 73 (citations omitted). " 'Fraudulent joinder occurs either when there is no possibility that a plaintiff can state a cause of action against nondiverse defendants in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts.' " *Hoosier Energy*, 34 F.3d at 1315 (*quoting Gottlieb*, 990 F.2d at 327).

The Defendants in the present case do not claim that there was "outright fraud" in the Plaintiffs' pleading of jurisdictional facts. Rather, they maintain that there is no possibility that the Plaintiffs can state a cause of action against the Distributor Defendants in state court.

In order to establish fraudulent joinder, "[t]he defendant must show that, after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Poulos*, 959 F.2d at 73 (*citing B. Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981)) (emphasis in original). "At the point of decision, the federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?" *Id.* The removing defendant bears a heavy burden to

establish fraudulent joinder. *Id.* If a defendant fails to establish that a plaintiff has no reasonable possibility of success, the court must remand the case back to state court based on lack of complete diversity. *International Brotherhood of Teamsters Local 734 Health and Welfare Trust Fund v. Philip Morris, Inc.,* 1998 WL 242130 at *5 (N.D.Ill. May 8, 1998).

Thus, in the present case, the Defendants must demonstrate that the Plaintiffs' present claims against the nondiverse Distributor Defendants have no chance of success in state court. The Plaintiffs name the Distributor Defendants in Counts I, II, III, VI, and VII,[3] alleging a violation of the Illinois Antitrust Act; fraud and misrepresentation; a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.;* breach of express and implied warranties; and unjust enrichment. The Court, therefore, must determine whether the Plaintiffs have any chance of successfully litigating against the nondiverse Distributor Defendants any one of these claims in state court. For the following reasons, the Court finds that, although the complaint's specific reference to the Distributor Defendants are few, the Defendants have not met their heavy burden of establishing fraudulent joinder.

The Plaintiffs allege in Count III that the Distributor Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act (the Act), 815 ILCS 505/1 *et seq.* Section 2 of the Act provides, in pertinent part:

> [U]nfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" ... in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2. The Act also specifically provides for a private right of action. 815 ILCS 505/10(a).[4]

To state a cause of action under the Act, the Plaintiffs must set forth specific facts that show: (1) a deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of a material fact; (2) an intent that others rely upon it; and (3) that the deception occurred in the course of conduct involving trade or commerce. *See Bandura v. Orkin Exterminating Co.,* 865 F.2d 816, 820 (7th Cir.1988); 815 ILCS 505/2.

In the complaint, the Plaintiffs make the following allegations. The Manufacturer and Trade Association Defendants represented and promised to those who advance and protect the public health, and provide health care, including the Plaintiffs, that they would discover and disclose all material facts about the effects of cigarette smoking on human health, including addiction (Doc. 2, paras. 239, 256). The Defendants have made and continue to make representations, statements, and promises about the safety of cigarettes and their effect on human health and addiction (Doc. 2, paras. 240, 257). Such representations, statements, and promises were and are materially false, incomplete, and fraudulent, and the Defendants knew or had reason to know of their falsity (*Id.*). At all relevant times, the Defendants intentionally, willfully, or recklessly misrepresented,

---

**3.** The Plaintiffs have not directed Counts IV or V at the Distributor Defendants.

**4.** Section 10(a) provides, in pertinent part: Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. 815 ILCS 505/10(a).

failed to disclose, and concealed material facts about the human health hazards of smoking cigarettes, including addiction, and cigarette smoking's association with various kinds of cancer and heart disease in violation of 815 ILCS 505/2 (Doc. 2, paras. 241, 260).

Because of the Defendants' secret internal research, the Defendants' knowledge of the material facts about smoking, health, and addiction was and is superior to the knowledge of the Plaintiffs' participants and beneficiaries who purchased, used, and consumed the Defendants' cigarettes; to that of the Plaintiffs, which undertook to provide comprehensive health care for their participants and beneficiaries; and to that of the public entities which bear responsibility for the public health (Doc. 2, paras. 242, 261). Both the Plaintiffs' and public's access to these facts is limited because such facts are exclusively within the Defendants' control (Id.).

By expressly raising the issue of smoking, health, and addiction and making partial and incomplete statements about this issue, the Defendants had a duty to reveal all material facts of which they had notice or actual knowledge, in order not to deceive and mislead the Plaintiffs and their participants and beneficiaries (Doc. 2, paras. 243, 262). The Defendants' disclosure of fragmentary information and half-truths constitutes actionable misrepresentation in violation of 815 ILCS 505/2 (Id.). The Manufacturer and Trade Association Defendants also purposefully placed themselves in a unique relationship to the Plaintiffs' participants and beneficiaries and to the Plaintiffs by expressly telling the public, including the Plaintiffs and their participants and beneficiaries, to place special trust and confidence in their promises to discover and disclose all material facts about smoking, health, and addiction (Doc. 2, paras. 244, 263). The Plaintiffs were in a vastly inferior position to discover the truth about cigarettes (Id.). Said Defendants voluntarily undertook the responsibility to discover and disclose the truth

about cigarettes and, in fact, did so for the purpose of cultivating the trust and confidence of their consumers and of the Plaintiffs and thereby to induce the Plaintiffs and their participants and beneficiaries to rely on said Defendants' promises (Id.).

The Distributor Defendants have participated in and assisted in distributing advertisements and displays with misleading statements of said Manufacturer and Trade Association Defendants that have the tendency and effect of deceiving or misleading the Plaintiffs, the Plaintiffs' participants and beneficiaries, and the general public regarding the addictive nature of nicotine, and of misrepresenting the characteristics of cigarettes (Doc. 2, paras. 227(g), 245, 258). The Distributor Defendants have continued to distribute the Manufacturer Defendants' cigarette products after having knowledge of the health hazards and highly addictive quality of smoking cigarettes without informing the Plaintiffs' participants and beneficiaries and other consumers of the addictive nature of nicotine (Doc. 2, paras. 246, 259). These are omissions of material fact that may have alerted the Plaintiffs of possible addiction (Id.).

The Plaintiffs reasonably and justifiably relied on the Defendants' misrepresentations and material nondisclosures (Doc. 2, paras. 247, 264). Because of the Defendants' material nondisclosures and misrepresentations, the Plaintiffs and public health agencies lacked complete information regarding the effects of smoking on health, the relationship between nicotine and addiction, and the manipulation of levels of nicotine delivery to ensure addiction (Id.). As a result, the Plaintiffs, as well as public health agencies, relied on false or incomplete information in taking or not taking actions to discourage and reduce cigarette use by the participants and beneficiaries (Id.). The Defendants are aware of the dependency of the Plaintiffs, the Plaintiffs' participants and beneficiaries, and the general public, on receiving complete information from government agen-

cies concerning health risks and have exploited this dependency to their advantage and to the Plaintiffs' detriment (Doc. 2, paras. 248, 265). The Defendants sought to induce the public's reliance, including the Plaintiffs' reliance and that of their participants and beneficiaries, on the Defendants' representations and promises to disclose the truth about cigarettes, knowing that the public, including the Plaintiffs and their participants and beneficiaries, was in a vastly inferior position to discover the truth about cigarettes (Doc. 2, paras. 249, 266). The Defendants engaged in this fraudulent course of conduct for the purpose of influencing the market and reaping huge profits, despite the Defendants' duty to disclose all material information about the known defects in their cigarettes and the hazards of smoking them (Doc. 2, paras. 250, 267). The Defendants' fraudulent statements, concealment, and conduct, including their effect upon the market for cigarettes, was a substantial cause persuading the Plaintiffs' participants and beneficiaries to purchase and use a deadly and addictive product (Id.). The Defendants also sought to fraudulently shield themselves from having to pay the health care costs of smoking-related diseases and to shift those costs to others, including the Plaintiffs (Id.).

The facts concealed by the Defendants about smoking, health, and addiction were material in that a reasonable consumer would have considered them important in deciding whether to purchase and smoke cigarettes and a reasonable health care provider would have considered them important in deciding how to provide comprehensive health care (Doc. 2, paras. 251, 268).

The Plaintiffs reasonably and justifiably relied on the Defendants' materially false, incomplete, and misleading representations about smoking, health, and addiction, and the Defendants' nondisclosures of material facts about cigarette smoking and health (Doc. 2, paras. 252, 269). As a result of such reliance, the Plaintiffs failed to take or would have taken sooner actions to more appropriately treat smoking-related injuries and diseases as well as to discourage and reduce cigarette use, and the costs associated therewith, by the Plaintiffs' participants and beneficiaries (Id.). The Plaintiffs' participants and beneficiaries, as well as the general public, also relied on the nondisclosures of material facts about cigarette smoking and health, and were thereby induced to purchase, smoke, and become addicted to a deadly and defective product, to the detriment of the Plaintiffs (Doc. 2, paras. 253, 270).

As a direct and proximate result of the Defendants' fraudulent misrepresentations, nondisclosures, and active concealment, the Plaintiffs have suffered and will continue to suffer substantial injuries and damages for which the Plaintiffs are entitled to recover, and for which the Defendants are jointly and severally liable (Doc. 2, paras. 254, 271).

■■■ Based upon the allegations in the present case, the Court finds that the Defendants have failed to meet their heavy burden of showing that the Plaintiffs have no reasonable possibility of success against the Distributor Defendants in state court on their claim under the Act. See Poulos, 959 F.2d at 69. Therefore, the Court finds that the nondiverse Distributor Defendants were not fraudulently joined for the sole purpose of destroying this Court's diversity jurisdiction, and consequently this Court does not have diversity jurisdiction, pursuant to 28 U.S.C. § 1332, over this case. Given the Court's finding that the Defendants have not carried their burden of showing that the Plaintiffs have no chance of success against the Distributor Defendants in state court on their claim under the Act, the Court need not address the Plaintiffs' chance of success on their other claims.

## C. ERISA PREEMPTION

The Defendants have also sought to invoke this Court's federal question jurisdiction. The Defendants argue that removal

was proper in this case because the Plaintiffs' claims, despite their state law appearance, actually come within the broad scope of the civil enforcement provisions of § 502(a) of ERISA, 29 U.S.C. § 1132(a). In the alternative, the Defendants argue that the Plaintiffs' claims, even if technically not within the purview of § 502(a), "arise under" federal law for purposes of 28 U.S.C. § 1331 due to ERISA's broad scope.

"Ordinarily a court determines whether there is federal question jurisdiction by examining the plaintiff's well-pleaded complaint, for '[i]t is long-settled law that a cause of action arises under federal law only when the plaintiff's well[-]pleaded complaint raises issues of federal law.'" *Rice v. Panchal*, 65 F.3d 637, 639 (7th Cir.1995) (*quoting Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). "The issues raised in the plaintiff's complaint, not those added in the defendant's response, control the litigation." *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1486 (7th Cir.1996). The Supreme Court has emphasized that "the paramount policies embodied in the well-pleaded complaint rule [are] that the plaintiff is master of the complaint ... and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398–99, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). "Thus the defendant cannot cause a transfer to federal court simply by asserting a federal question in his responsive pleading." *Rice*, 65 F.3d at 639.

In *Avco Corp. v. Aero Lodge No. 735, International Association of Machinists & Aerospace Workers*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), the Supreme Court created an exception to the well-pleaded complaint rule where Congress has completely preempted a given area of state law. "Although the 'complete preemption' doctrine has become fully accepted, confusion remains because the complete preemption doctrine 'is not a preemption doctrine but rather a federal jurisdiction doctrine.'" *Speciale v. Seybold*, 147 F.3d 612, 614 (7th Cir.1998) (*quoting Lister v. Stark*, 890 F.2d 941, 943 n. 1 (7th Cir.1989)). The "complete preemption" doctrine provides that "to the extent that Congress has displaced a plaintiff's state law claim, that intent informs the well-pleaded complaint rule, and a plaintiff's attempt to utilize the displaced state law is properly 'recharacterized' as a complaint arising under federal law." *Rice*, 65 F.3d at 640 n. 2 (*citing Metropolitan Life*, 481 U.S. at 64, 107 S.Ct. 1542). In other words,

a plaintiff cannot avoid complete preemption, and thereby deny a defendant access to federal court if the actual nature of the complaint is federal, by artfully pleading a complaint so as to omit facts that indicate federal jurisdiction. Therefore, a federal court may, in some situations, look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law. Such a situation exists where ... federal law displaces an area of state law and the plaintiff frames [his or] her complaint in such a way as to avoid the appearance of complete preemption.

*Jass*, 88 F.3d at 1488 (quotations and citations omitted).

Whether or not a cause of action has been completely preempted is determined by the intent of Congress. *Metropolitan Life*, 481 U.S. at 66, 107 S.Ct. 1542. The "complete preemption" exception was originally limited to claims arising under § 301 of the Labor Management Relations Act (LMRA). *Id.* at 63–64, 107 S.Ct. 1542. In *Metropolitan Life*, the Supreme Court extended the "complete preemption" exception to the well-pleaded complaint rule to ERISA cases, reasoning that "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) re-

movable to federal court." 481 U.S. at 63–67, 107 S.Ct. 1542.

Section 502(a) of ERISA provides, in pertinent part:

A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a).

The doctrine of "conflict preemption" under § 514(a)[5] of ERISA (a doctrine separate and distinct from that of "complete preemption" under § 502(a)) does not create a basis for removal and cannot convert a state cause of action into a federal cause of action under the well-pleaded complaint rule. *See Jass,* 88 F.3d at 1487–88. The parties concede that "conflict preemption" is not applicable here, so the only inquiry is whether the Plaintiffs' claims are completely preempted by § 502(a), the preemptive force of which is coextensive with that of § 301 of the LMRA. *See Metropolitan Life,* 481 U.S. at 65–66, 107 S.Ct. 1542.

This presumptive force, albeit extraordinary, is not limitless. Although a plaintiff cannot use artful pleading to avoid displacement of state law claims that are really claims under ERISA, § 502(a) cannot distort a plaintiff's well-pleaded state law cause of action into one arising under ERISA if resolution of the purely state law claims requires no construction of the ERISA plan or its terms. *Jass,* 88 F.3d at 1488–89. The question thus is whether the Plaintiffs' claims really implicate ERISA rather than the state laws cited in the complaint. *Id.* at 1489.

In *Jass,* 88 F.3d at 1487, the Seventh Circuit, relying on its decision in *Rice,* 65 F.3d 637, reiterated the three factors that are relevant in determining whether a claim is within the preemptive scope of § 502(a). Those factors are:

(1) whether the plaintiff is eligible to bring a claim under that section; (2) whether the plaintiff's cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via § 502(a); and (3) whether the plaintiff's state law claim cannot be resolved without an interpretation of the contract governed by federal law.

*Id.* at 1487 (quotations and citations omitted). In applying these factors, the Court is "not limited by the complaint, but may look beyond it to assure [itself] 'that the plaintiff has not by "artful pleading" sought to defeat defendant's right to a federal forum.'" *Id.* at 1488–89.

In the present case, the Defendants argue that the Plaintiffs' allegations demonstrate the manner in which their claims are based upon ERISA. The Defendants focus on the allegations in paragraph 17 of the Plaintiffs' complaint, which provide, in pertinent part:

The ... Funds are "employee welfare benefit plans" and "employee benefit plans" within [ERISA, 29 U.S.C. §§ 1002(1), 1002(3), and 1003(a) ]. As such, the Funds are legal entities enti-

---

**5.** Section 514(a) of ERISA provides, in pertinent part: Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. 29 U.S.C. § 1144(a).

tled to bring suit in their own name[s], pursuant to 29 [U.S.C. § 1132(d)]. Pursuant to the trust agreement under which they were created, the Funds provide comprehensive health care benefits to participants who are employed under various collective bargaining agreements and to their dependents, and to retirees. In addition, the Funds' health and medical benefits and services are provided under written benefit plans. These plans contain certain subrogation provisions under which the Fund[s] are subrogated to all the rights and causes of action of [their] participants and beneficiaries for whom the Funds pay medical benefits for injuries and illnesses caused by any third party tortfeasors. The named plaintiffs, on their own behalf and all others similarly situated, seek to recover the tobacco-related benefit costs incurred by them and all similarly situated health and welfare funds, including, but not limited to, expenditures for medical assistance due to the use of tobacco by their participants and beneficiaries. In addition, the Funds, on their own behalf and all others similarly situated, bring this action to obtain declaratory and equitable relief and restitution.

(Doc. 2, para. 17). The Defendants also focus on paragraph 6 of the complaint, in which the Plaintiffs allege that "[t]he trustees of the Plaintiff's [*sic* ] Funds are bound by their fiduciary duties under [ERISA] to ascertain the legal liability of third parties to pay for care and services available under the employee benefit plans paid for out of the Funds, and to seek reimbursement to the plaintiffs to the extent of such legal liability." (Doc. 2, para. 6).

In order to determine whether the Plaintiffs' claims are completely preempted by ERISA, thereby granting this Court removal jurisdiction, it is necessary to analyze the Plaintiffs' complaint under the three factors set out in *Jass*. *See Jass*, 88 F.3d at 1487.

Thus, the first inquiry is whether the Plaintiffs are eligible to bring a claim under § 502(a). The parties do not dispute that, under 29 U.S.C. § 1132(d), the Plaintiff trustees, as fiduciaries, are empowered to bring a civil action under § 502(a). Therefore, the § 502(a) preemption analysis turns on the second and third factors, which are: whether the Plaintiffs' claims fall within the scope of an ERISA provision that the Plaintiffs can enforce via § 502(a) and whether the Plaintiffs' claims cannot be resolved without an interpretation of the contract governed by federal law. Contrary to the Plaintiffs' assertions that they are not invoking the plans' subrogation provisions, the Defendants characterize this action as one to enforce the terms of the plans because the Plaintiffs seek to recover, pursuant to the plans' subrogation provisions, monies spent on the participants' health care expenses.

The Defendants have relied upon several authorities to support their argument that the Plaintiffs' claims are completely preempted, including *Metropolitan Life*, 481 U.S. 58, 107 S.Ct. 1542; *Jass*, 88 F.3d 1482; *Shannon v. Shannon*, 965 F.2d 542 (7th Cir.1992); *Winstead v. J.C. Penney Co.*, 933 F.2d 576 (7th Cir.1991); and *Central States, Southeast and Southwest Areas Health and Welfare Fund v. Comprehensive Care Corp.*, 864 F.Supp. 831 (N.D.Ill.1994). Because § 502(a) preemption analysis turns on fact intensive inquiries, a thorough review of these cases is warranted.

In *Metropolitan Life*, 481 U.S. at 60, 107 S.Ct. 1542, a former employee of General Motors (GM) sued GM and its employee benefit plan in state court for, among other things, failure to pay under the terms of the plan. The defendants removed on the basis that § 1132(a)(1)(B) completely preempted the plaintiff's state law claim, giving rise to removal jurisdiction. *Id.* In concluding that complete preemption did exist, the court relied on the language of § 502(f), which provides that "[t]he district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the par-

ties, to grant the relief provided for in subsection (a) of this section in any action." 29 U.S.C: § 1132(f). *Id.* The Court found that this language paralleled the language of § 301 of the LMRA. *Id.* The Court also relied on the legislative history of § 1132(a). *Id.* at 64–65, 107 S.Ct. 1542. The Court found that Congress specifically intended for federal district courts to have exclusive jurisdiction over civil enforcement actions brought by plan participants and beneficiaries to enforce their rights under employee pension and welfare plans covered by ERISA. *Id.* at 65–67, 107 S.Ct. 1542.

In *Jass,* 88 F.3d at 1485, the plaintiff participated in an ERISA plan sponsored by her husband's employer. After being hospitalized for a knee condition, she alleged that she suffered permanent injury as a result of premature discharge from the hospital without necessary rehabilitation and physical therapy. *Id.* She sued a nurse employed by the plan for negligence and the plan itself for the nurse's negligence under a theory of vicarious liability. *Id.* The defendants removed to federal court, claiming both diversity and federal question jurisdiction premised on ERISA preemption, and the plaintiff moved to remand. *Id.* Although subsequent joinder of a non-diverse party destroyed diversity jurisdiction, the district court found that it had federal question jurisdiction because ERISA preempted the claims. *Id.* at 1485–86.

The issue on appeal was whether the negligence claim against the nurse and the vicarious liability claim against the plan were subject to complete preemption under § 502(a). *Id.* at 1488–89. The Court held that the claim against the nurse was truly a federal denial of benefits claim under ERISA, and, as such, it was preempted by § 502(a). *Id.* at 1490. The Court thus recharacterized the negligence claim against the nurse as one arising under federal law. *Id.*

In reaching this conclusion, the Court relied upon several fact-intensive inquiries,

including an analysis of the three factors set out in *Rice. Id.* at 1489–90. Evaluating those factors, the Court found that (1) the plaintiff was entitled to bring the suit under § 502(a) as a plan participant; (2) the plaintiff's claim against the nurse was really a claim for the denial of benefits; and (3) the negligence claim could not be resolved without interpreting the benefits contract because that contract provided the benefits to which the plaintiff was entitled. *Id.* at 1489.

In other words, the Court found that, although the plaintiff had framed her complaint as one sounding in negligence by a health care provider and although the individual defendant was a registered nurse, the plan employed her in the capacity of a utilization review administrator, an administrative role in which she assessed what health benefits the plaintiff was entitled to receive and in which she decided what course of treatment to pursue. *Id.* The Court found that these decisions constituted the determination of benefits within the meaning of ERISA. *Id.*

The plaintiff in *Jass* alleged that her injury arose from premature discharge from the hospital without necessary rehabilitation and physical therapy. *Id.* The nurse's only contact with the plaintiff was in her capacity as a plan administrator who made decisions regarding necessary treatment. *Id.* She did not provide the plaintiff with medical treatment. *Id.* The crux of the suit against the nurse, therefore, was the denial of benefits due under the terms of the plan; and because ERISA provides the exclusive remedy to beneficiaries to recover benefits from a covered plan, the case necessarily arose under federal law. *Id.* at 1490. Consistent with its characterization of the claim against the nurse, the Court held that the vicarious liability claim against the plan for the nurse's negligence was also a § 502(a) denial of benefits claim, and, as such, it was completely preempted. *Id.* at 1490–91.

In *Shannon,* 965 F.2d at 544, the daughter of an employee covered by an ERISA plan had been hospitalized after an accident. The plan paid $1.3 million in medical bills but eventually ceased making payments. *Id.* The daughter filed a personal injury suit in state court against her parents, their insurance carrier, the next-door neighbors, and their insurance carrier. *Id.* The plan intervened to assert subrogation and reimbursement claims under the terms of the plan against the daughter and her parents. *Id.* The daughter and her parents in turn filed counterclaims against the plan. *Id.* The plan removed the action to federal court pursuant to § 502(a) of ERISA and 28 U.S.C. § 1441(c). *Id.* Upon the plaintiff's challenge to the propriety of the removal, the Court held that "the Plan's intervention to enforce the terms of the plan—namely, its alleged right to subrogation and reimbursement—more than likely invoked ERISA, preemption-based removal. 29 U.S.C. § 1132(a)(3)(B)(ii), 1132(e). If it did not, then the Shannons' subsequent counterclaims against the Plan surely did." *Id.* at 546.

"Thus, *Shannon* teaches that a suit between a plan participant and the plan itself over the right to money recovered by the participant's lawsuit against a third party may be within § 502(a)'s coverage because the plan itself defines the right to recover such awards." *Teamsters Union No. 142 Health and Welfare Trust Fund v. Philip Morris, Inc.,* No. 3:97–CV–667RM at 7–8 (N.D.Ind. Feb. 27, 1998). *See also Milwaukee Carpenter's District Counsel Health Fund v. Philip Morris, Inc.,* No. 98–C–0394 at 11–12 (E.D.Wis. Sep. 17, 1998).

In *Winstead,* 933 F.2d at 577, the underlying suit arose over the health coverage of a child whose parents were participants in two different ERISA plans, the Central States, Southeast and Southwest Areas Health and Welfare Fund and the J.C. Penny Plan. Both plans refused to pay for the health coverage. *Id.* After the parents sued both plans for the benefits in Louisi-

ana state court, the plans removed the action to federal court, where the J.C. Penny plan filed a cross claim seeking declaratory judgment that the Central States plan was liable for the payments. *Id.* However, the trustees of the Central States plan had previously filed a declaratory judgment action in federal district court in Chicago seeking a declaration that the J.C. Penney plan was liable for the child's hospital expenses. *Id.* The district court in Chicago dismissed Central States' suit for lack of federal jurisdiction, and Central States appealed. *Id.* The Louisiana suit was stayed pending the decision in the federal appeal in Illinois. *Id.*

The issue on appeal was whether, under ERISA, the trustees of one ERISA plan against which a beneficiary had filed a claim could sue another interlocking ERISA plan for a declaration that the second plan had the primary coverage and thus must pay the claim. *Id.* The Court held that "[a] suit to enforce a coordination-of-benefits provision is a suit to enforce the plan in which the provision appears." *Id.* at 579. Thus, the declaratory judgment action between the two plans was within § 502(a)(3)(B)'s jurisdictional reach. *Id.*

In *Central States,* 864 F.Supp. at 832, a trustee of Central States, an ERISA fund, sued a health care provider, CompCare, in federal court to recover benefits the fund had wrongfully paid to CompCare. Central States premised federal jurisdiction upon § 502(a). *Id.* CompCare filed a motion to dismiss, arguing lack of subject matter jurisdiction. *Id.*

In that case, Mr. Reister was a participant in the plan, which also covered his wife. *Id.* Under the terms of the plan, coverage for one's spouse ended upon termination of legal marriage to the participant. *Id.* Mr. Reister's ex-wife had received treatment at CompCare commencing one week after their divorce. *Id.* The ex-wife had assigned to CompCare any rights she had to receive payment for the treatment from the plan.

*Id.* Although CompCare knew that the ex-wife was no longer eligible for benefits under the plan, it nevertheless submitted the bill for treatment. *Id.* The plan, unaware of the Reisters' divorce and the ex-wife's consequent ineligibility for coverage under the plan, paid CompCare's bill in violation of the express terms of the plan. *Id.* Upon learning that the payments were unauthorized, the plan sued CompCare to recover those payments. *Id.*

The Court held that § 502(a) does not limit the type of defendants against whom an ERISA action may be brought. *Id.* at 834. Rather, § 502(a)'s broad jurisdiction permits "fiduciaries, beneficiaries and participants to redress plan violations generally without regard to how or under what circumstances the Plan was violated." *Id.* Thus, the Court concluded that § 502(a) does not preclude suits where the plan violation arises out of dealings with non-parties. *Id.* Accordingly Central States' suit was properly brought under ERISA to "enforce (read effectuate) the terms of the Plan and to redress a violation of the Plan" where the plan had made payments in direct violation of its specific terms and provisions. *Id.* "Central States thus teaches that § 502(a)'s jurisdiction is not limited to suits between a plan participant and a plan, but can extend to suits against third parties that are ERISA-related." *Teamsters Union,* No. 3:97–CV–667RM at 10.

"The reasoning underlying § 502(a) preemption in these cases is the same: federal law displaces state law claims where those claims really seek to enforce rights created by an ERISA plan or where the claims cannot be resolved without interpreting a provision of an ERISA plan or defining rights and duties created therein." *Id.* at 12. Claims to enforce a term of a plan, redress a violation of a plan, or recover benefits due under a plan—or that otherwise require interpretation of a plan—invoke § 502(a) jurisdiction because Congress intended that "federal courts [ ]develop a common law of rights and

obligations under [ERISA plans]." *Rice,* 65 F.3d at 646. Exclusive ERISA jurisdiction exists so that federal substantive law may "deal with issues involving rights and obligations under private welfare and pension plans." *See Metropolitan Life,* 481 U.S. at 66, 107 S.Ct. 1542.

■ The Plaintiffs' claims in the present case are not within the preemptive scope of § 502(a). Unlike *Shannon,* the allocation between the plan and the plan's participants of any recovery from the Defendants is not at issue in the present case. *See Shannon,* 965 F.2d at 546. Rather, the funds here have sued third parties, and the participants of the plans are not involved at all.

Unlike *Winstead, Central States, Jass,* and *Metropolitan Life,* the Plaintiffs' action here is not to enforce the terms of the plan, redress a violation of the plan, or recover benefits due under the plan. *See Winstead,* 933 F.2d at 579; *Central States,* 864 F.Supp. at 834; *Jass,* 88 F.3d at 1489; and *Metropolitan Life,* 481 U.S. at 58, 107 S.Ct. 1542.

Nor do the Plaintiffs allege that they are entitled to recover amounts they have paid out to beneficiaries by virtue of any subrogation provision of the plans. Instead, they allege that they are suing, in their own names, "to recover funds expended by [them] to provide medical treatment to their participants and beneficiaries suffering from smoking-related illnesses and to seek appropriate injunctive relief against the Defendants' continuing illegal and outrageous conduct." (Doc. 2, para.5). Contrary to the Defendants' contentions, the Plaintiffs are not seeking to enforce the subrogation provisions of the plans.

Unlike *Central States,* there is no allegation in the present case that the funds' integrity has been violated by payments that were not authorized under the plan. *See Central States,* 864 F.Supp. at 834. Rather than alleging that the payments to the health care providers were not authorized, the Plaintiffs allege that the De-

fendants are liable for the participants' medical condition which gave rise to the necessity of treatment. There is no allegation or inference that the payments to the health care providers were improper under the plan.

In addition, the Plaintiffs' state law claims can all be resolved without an interpretation of any part of the ERISA plans. *See Jass,* 88 F.3d at 1487.

The only conceivable references to plan provisions which might be necessary to resolve the Plaintiffs' claims against the Defendants would be the provisions giving subrogation rights to any claims against the Defendants that the participants may have.[6] This Court agrees with the following decisions with respect to the impact of the subrogation clause: *Teamsters Union,* No. 3:97–CV–667RM at 13; *International Brotherhood of Teamsters Local 734 Health and Welfare Trust Fund v. Philip Morris, Inc.,* 1998 WL 242130 at *8 (N.D.Ill. May 8, 1998); and *Milwaukee Carpenters District Counsel Health Fund v. Philip Morris, Inc.,* No. 98–C–0394 (E.D.Wis. Sept. 17, 1998). The meaning of the subrogation clause is not at issue in these cases. The Plaintiffs are attempting to recoup monies that they expended for plan participants' or beneficiaries' health care. They are not attempting to recover monies on behalf of the plan participants or beneficiaries. Thus, the clause, at best, would be mentioned only in passing.

Such a reference to the subrogation clause would not invoke § 502(a)'s jurisdictional force; not every dispute that tangentially involves a provision of an ERISA plan is preempted by § 502(a). *See Atchley v. Heritage Cable Vision Assocs.,* 101 F.3d 495, 499 (7th Cir.1996) *(quoting Livadas v. Bradshaw,* 512 U.S. 107, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994)) (" '[W]hen the

meaning of contract terms is not the subject of dispute, the bare fact that [an ERISA plan] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.' Instead, as we have noted, preemption is found when a provision of the [ERISA plan] is the subject of the dispute or the dispute is substantially dependent upon an analysis of the terms of the [ERISA plan].") Reference to this part of the plan (if indeed necessary) would not modify, add, or otherwise lend to the common law of rights and obligations under the ERISA plans. *See Rice,* 65 F.3d at 646. Accordingly, the Plaintiffs' claims are not completely preempted under § 502(a).

▉ Having found that the Plaintiffs' claims are not within the scope of § 502(a), the Court turns to the Defendants' alternative argument that the Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under ERISA because it is related to an ERISA plan. In *Winstead,* 933 F.2d at 579, the Court noted in *dicta* that "[g]iven ERISA's broad preemption provision, virtually every suit relating to an ERISA plan ... can be said to arise under federal law, and hence to be within the jurisdiction of the federal courts by virtue of section 1331." Section 1331 may be used to "plug a hole in ERISA's jurisdictional provisions" when consistent with administering ERISA in accordance with its overall goals and functions, such as protecting the integrity of payments made by plans and ensuring uniform interpretation of plan provisions and terms. *Id.* at 580.

Whether a suit "relates to" an ERISA plan is a question of "conflict preemption" and thus is not jurisdictional. *See Jass,* 88 F.3d at 1487. In addition, unlike the present case, *Winstead* was not a removal case;

---

**6.** The other references to the plans merely provide background information: the Plaintiffs' capacity to file suit rests on ERISA; the monies sought to be reimbursed were provided pursuant to ERISA plans; and the fiduciary duties imposed by ERISA required the

Plaintiffs to seek reimbursement by filing suit. None of these references to ERISA plans, however, require any analysis of plan provisions. *See International Brotherhood,* 1998 WL 242130 at *8 n. 4.

instead, the plaintiff itself brought the action in federal court. *See Winstead,* 933 F.2d at 577.

Moreover, the present case is not one in which invoking § 1331 jurisdiction to bring the case within ERISA's grasp would further ERISA's overall goals and functions or be consistent with its administration. Premising federal jurisdiction over this case through § 1331 would not fill a gap left by Congress; nor would it be consistent with the Congressional rationale for giving federal courts jurisdiction over all ERISA-related matters. Accordingly, the Court finds that it does not have federal question jurisdiction over this case under either § 502(a) of ERISA or 28 U.S.C. § 1331.

The Court has considered the decision from the Eastern District of Missouri in *Construction Laborers of Greater St. Louis Welfare Fund v. Philip Morris Inc.,* No. 4:97CV02030 ERW (E.D.Mo. July 9, 1998), and the decision from the District of Minnesota in *Carpenters and Joiners Welfare Fund v. Philip Morris, Inc.,* No. 98–515 (PAM/JGL) (D.Minn. Sept. 1, 1998). However, the Court respectfully disagrees with the reasoning in these decisions and declines to follow them.

### CONCLUSION

For the foregoing reasons, this case was improperly removed to this Court. Accordingly, this Court's order of March 16, 1998, (Doc. 60) denying the Plaintiffs' motion to remand (Doc. 19) is **VACATED;** the Plaintiffs' motion to remand (Doc. 19) is **GRANTED;** and this case is **REMANDED,** pursuant to 28 U.S.C. § 1447(c), to the Circuit Court, Third Judicial Circuit, Madison County, Illinois.

**IT IS SO ORDERED.**